Michael STELLA, on behalf of himself and all other stockholders of Kaiser-Frazer Corporation, Plaintiff-Appellant,

v.

Henry J. KAISER, Joseph W. Frazer, Edgar F. Kaiser, G. G. Sherwood, E. E. Trefethen, Jr., Clay P. Bedford, W. A. MacDonald, O. B. Motter, Hickman Price, Jr., Walston S. Brown and Kaiser-Frazer Corporation, Defendants-Appellees.

No. 60, Docket 23107.

United States Court of Appeals, Second Circuit.

Argued Oct. 7, 1954.

Decided Dec. 7, 1954.

Rehearing Granted.

Lewis M. Dabney, Jr., New York City, for plaintiff-appellant.

H. Bartow Farr, New York City (Willkie, Owen, Farr, Gallagher & Walton, New York City, on the brief for defendant-appellee Kaiser-Frazer Corp. and Corbin, Bennett & Delehanty, New York City, on the brief for defendants-appellees Henry J. Kaiser, Joseph W. Frazer, Edgar F. Kaiser, G. G. Sherwood, E. E. Trefethen, Jr., Clay P. Bedford, W. A. MacDonald, O. B. Motter, Hickman Price, Jr., and Walston S. Brown), for defendants-appellees.

Before CLARK, Chief Judge, and L. HAND and FRANK, Circuit Judges.

CLARK, Chief Judge.

This appeal concerns the effect as res judicata and bar of a decree of settlement of a stockholders' derivative action entered by a federal court pursuant to Fed.Rules Civ.Proc. 23(c), and of the releases executed thereunder. Plaintiff-appellant is one of several stockholders bringing a variety of derivative actions on behalf of the Kaiser-Frazer

Corporation against its officers and directors. By order of a United States District Court in Michigan, after due notice, all claims were there consolidated and a settlement was reached which purported to bind all stockholders and all officers of the corporation. Pergament v. Frazer, D.C.E.D.Mich., 93 F. Supp. 13–45. Despite vigorous protest by several stockholders, including plaintiff, the Court of Appeals affirmed the settlement, Masterson v. Pergament, 6 Cir., 203 F.2d 315–336, and the Supreme Court denied certiorari, 346 U.S. 832, 74 S.Ct. 33. When plaintiff thereafter sought to resume in the district court below the action he had begun before the institution of the Michigan proceedings, see Stella v. Kaiser, D.C. S.D.N.Y., 82 F.Supp. 301, defendants-appellees successfully pleaded the Michigan judgment in bar. In asking us to reverse the entry of summary judgment below, plaintiff attacks the conclusive nature of the Michigan settlement on a variety of grounds.

Plaintiff's complaint charged breach of fiduciary duty in defendants' attempted stabilization of the price of Kaiser-Frazer stock at the time of a public stock offering in February, 1948. There is apparently no claim of illicit personal gains made by defendants at the corporation's expense. The gravamen of the complaint is violation of the antimanipulation and antifraud sections of the Securities Exchange Act of 1934, 15 U.S. C. § 78a et seq., and the Securities Act of 1933, 15 U.S.C. § 77a et seq., together with negligent waste of Kaiser-Frazer's corporate assets. Cf. Kaiser-Frazer Corp v. Otis & Co., 2 Cir., 195 F.2d 838, certiorari denied 344 U.S. 856, 73 S.Ct. 89, 97 L.Ed. 664.

There is no doubt that this claim was one of those compromised and settled by the Michigan decree. See Pergament v. Frazer, supra, D.C.E.D.Mich., 93 F.Supp. 13, 33–35. Plaintiff was an active litigant in the proceedings there and is bound under the principles of res judicata at least with respect to those defendants who were parties of record in Michigan. Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244. Even without his active participation Stella would have been bound by the Michigan court's action, since it was a conclusive adjudication of a "true" class action, Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741; 3 Moore's Federal Practice ¶ 23.11 (2d Ed. 1948); McLaughlin, Capacity of Plaintiff-Stockholder to Terminate a Stockholder's Suit, 46 Yale L.J. 421, 424, and since, moreover, there was adequacy of notice and representation as found by the Sixth Circuit, Masterson v. Pergament, supra, 6 Cir., 203 F.2d 315, 330. See Dickinson v. Burnham, 2 Cir., 197 F.2d 973, certiorari denied 344 U.S. 875, 73 S.Ct. 169, 97 L.Ed. 678, and proposed Rule 23(d) in Preliminary Draft of Proposed Amendments to Rules of Civil Procedure for the United States District Courts, May 1954, pp. 15–17, discussed in Wright, Amendments to the Federal Rules: The Function of a Continuing Rules Committee, 7 Vand.L.Rev. 521, 539–540.

Plaintiff asserts, however, that the settlement itself was procured by fraud and that the Michigan decree is subject to attack for failure to decide this issue. But in this he is in error, for the fraud issue was in fact disposed of adversely to him by the Court of Appeals. Masterson v. Pergament, supra, 6 Cir., 203 F.2d 315, 330–331. Since this issue was repeatedly raised, it cannot now be made the basis for collateral attack. De Bobula v. Goss, 90 U.S.App. D.C. 28, 193 F.2d 35.

Plaintiff's further argument vigorously pressed that the Michigan proceedings are not res judicata because they were merely administrative borders on the fantastic. It can hardly be claimed that that ancient device of a court of equity, the class suit, is nonjudicial; and there is nothing in the substantive provisions of this rule—"A class action shall not be dismissed or compromised without the approval of the court"—to change its character. Actually, as is well settled,

the federal district courts, as constitutional courts, have only judicial, and no administrative, jurisdiction, Keller v. Potomac Electric Power Co., 261 U.S. 428, 43 S.Ct. 445, 67 L.Ed. 731, and the Federal Rules do not and cannot change that jurisdiction. F.R.C.P. 83, 28 U.S.C. § 2072. In none of the cases or authorities dealing with this rule and cited supra is there any suggestion that its impact is other than completely judicial. Plaintiff places considerable reliance upon district court rulings departing from the usual conceptions of a trial such as refusal of examination before trial and admission of incompetent evidence. Those have not been reviewed on appeal; whether correct or not, they cannot negative district court jurisdiction any more than can certain expressions attributed to defendants, but quoted rather out of context.

Plaintiff's most cogent attack on the Michigan decree focuses on the lack of complete identity between the parties of record here and in Michigan. One of the defendants, Edgar F. Kaiser, although he was a party to the Michigan suit, was not named in that count of the Michigan complaint which dealt with plaintiff's particular claim. Nonetheless, his presence in that suit made him fully amenable to all claims which might be present by amendment or otherwise and hence subject to a decree specifically settling all such claims. Hence by familiar principles of mutuality of estoppel, Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009, plaintiff also is bound. All of the other defendants except Walston S. Brown were named as defendants both of the decree in general and of this particular count. Thus they satisfy all requirements of identity, and res judicata applies. This leaves only the case of Brown, to which we now turn.

At first glance plaintiff's contention that he should be allowed to pursue his claim against Brown seems to have considerable force. Brown was originally a party to the Michigan action,

but was dropped because his presence would have destroyed the diversity jurisdiction of the Michigan court. His participation was thus limited to the giving of testimony. But even so, we think a more complete analysis requires the rejection of the contention.

Plaintiff relies heavily on Bigelow v. Old Dominion Copper Mining & Smelting Co., supra, 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009. But this case decided only the effect which exoneration of one joint tort-feasor should have on a suit against another. The policy reasons against allowance of such exoneration as a bar to action against another, which have been much criticized, see, e. g., Riordan v. Ferguson, 2 Cir., 147 F.2d 983, 991–993; Bruszewski v. United States, 3 Cir., 181 F.2d 419; Note, Res Judicata: The Requirement of Identity of Parties, 91 U. of Pa.L.Rev. 467, have little relevance to the situation of settlement which is before us here. Even if we were to concede, arguendo, that an aggrieved party should have several opportunities to attain one recovery, that would not militate in favor of permitting a double remedy for a single wrong. Either the receipt of full satisfaction for a claim or the unconditional release of it bars the plaintiff from further prosecution of that particular cause of action against any one. Rushford v. United States, D.C.N.D.N.Y., 92 F.Supp. 874, affirmed per curiam, 2 Cir., 204 F.2d 831; Larabell v. Schuknecht, 308 Mich. 419, 14 N.W.2d 50; Prosser, Torts § 109 (1941).

The Michigan compromise was in fact both a satisfaction and a release of plaintiff's claim. The terms of the settlement were carried out and the release was wholly unconditional. No attempt was made in Michigan to reserve rights against the absent Brown; on the contrary, the compromise explicitly purports to release Brown. It may not be clear whether the Michigan findings on the adequacy and the sufficiency of the consideration offered by defendants are to be taken as a determination of the consideration for the release or of

the fact of satisfaction of the claim itself. In either case, however, the only issue, as I see it, is whether a judicially effected compromise should have the same binding effect as a voluntary one would have. The writer of this opinion can see no reason why it should not. The judicial scrutiny contemplated by F.R.C.P. 23(c) gives to the parties a greater degree of protection than do many private settlements. The salutary effect of the rule would be seriously impaired if dissatisfied parties could revive compromised claims against parties whom the settlement expressly covered. The Third Circuit recently held that, even without judicial safeguards, a prior consent judgment may be successfully invoked by any defendants whose relationship to earlier defendants was "close enough." Lawlor v. National Screen Service Corp., 3 Cir., 211 F.2d 934, certiorari granted 75 S.Ct. 42. Here we need not go so far, but may hold simply that a member of the class of stockholders in a derivative action is bound by and must accept a judicially approved compromise in his behalf. This is the traditional class suit or representative situation, see Advisory Committee's Note to F.R.C.P. 23(a) (1); 3 Moore's Federal Practice 3436, 3437, 3459, 3460 (2d Ed.1948). Since Stella would thus be bound even by a totally adverse judgment, there seems no reason why he— so represented—should not be bound by the release and satisfaction ordered by the court.

As the concurring opinion herewith shows, my brethren reach the same conclusion as to the operation of the release, but take a somewhat different path. Accepting the modern law that the release of one joint tort-feasor no longer automatically releases all, they nevertheless assume to find here—apparently from the words of the release itself—the necessary intent of the parties now an essential requisite. On this basis the release operates independently of the legal action which gave it birth and being. Although the result is the essential matter and these nuances of ap-

proach may not have great significance to the parties, yet it is desirable from the standpoint of precedent to hew to the correct doctrine, one of potential utility in later cases. And here I feel compelled to suggest, with deference, that I believe my brothers are accepting fiction for fact, with the result of stressing only the nonessential. For, apart from the legal proceedings authorized by the rule, the release cannot have actual validity, nor the releasors the necessary intent. Obviously a number of those necessarily involved did not have the attributed intent; indeed, quite the contrary. That includes all those listed as objectors in the Michigan action, Stella among the rest. Had their objections not been legally surmountable, the release would be without force. Hence we should examine the legal action which furnishes the legally operative acts, and need spend little effort on some constructive intent assumable once the legal action is found correct. Since that correctness appears here, the rest follows, even my brothers' superstructure of rationale if that is deemed a necessary prop.

In considering the validity of these transactions ordered on behalf of Stella, we look primarily at the protection accorded him in view of his claim that the release is not binding on him, being against his will. But the same result against him seems required under another theory, resting upon strict application of the doctrine of mutuality of estoppel, by regarding Brown as properly represented in the Michigan action. Under this view the Michigan settlement is binding upon Brown and therefore is also res judicata as to Stella. While my brethren do not accept this rationale, it seems to the writer not merely a sound and necessary deduction from the authority given by the rule, but also a desirable use of a too-little employed procedural device. We have noted above the present trend toward a greater binding character for class suits. See particularly the discussion and the authorities cited in Dickinson v. Burnham, supra, 2 Cir., 197

F.2d 973, 979. Without going so far as many urge, it seems quite appropriate here to hold Brown bound by the Michigan judgment.

Proceedings under F.R.C.P. 23(c) of necessity involve a great number of potential litigants. In order to preserve diversity jurisdiction, some of these interested persons must be excluded from official participation in the action. If these persons are given notice and if they are otherwise adequately represented, they may nevertheless be bound by the court's decree. In the Michigan litigation in this case the directors, as well as the stockholders, met the necessary qualifications for a class. Their number was so great that jurisdictional considerations made it impossible to join them all as parties; they had substantially identical interests in the litigation, which raised an issue common to them all. Hansberry v. Lee, supra, 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22; Restatement, Judgments § 86, comment *b* (1942). It was presumably only a matter of convenience that when the diversity problem arose a director, rather than a stockholder, was dropped from the ranks of official litigants. As a member of the class of directors, Brown does not complain, nor could he, of the diligence with which his interests were protected. Hence under the authorities just cited he is bound by the compromise decree, even though he was not an official party to it. The decree thus meets all the requirements of res judicata as to Brown, as well as to all other defendants. And Brown being bound to Stella as one of the parties, Stella is in turn bound as to him.

Affirmed.

L. HAND, Circuit Judge (concurring).

■ I agree in the result as to all the defendants, and in the reasoning by which it is reached as to all except Brown. As to him I rest my vote upon somewhat different grounds. I do not believe that a judgment in favor of one director of a corporation is res judicata in favor of the others; but, since in the case at bar the directors were all joint tortfeasors, I rely upon the doctrine that the release of one releases all. That doctrine has been somewhat impaired, and was never well grounded in its absolute and unconditional form; but I am content arguendo to accept the following statement of it by Mr. Justice Rutledge (then in the Court of Appeals of the District)[1]: "Whether the settlement is made and accepted as full satisfaction or merely as the best obtainable compromise for the settler's liability is the crucial issue, and ordinarily one of fact. If however the agreement's terms leave no room for doubt, the decision should be made as a matter of law." I also accept the following gloss of the Restatement[2]: "a document in the usual form of a release given to one of them" (several joint tortfeasors) "is construed as intended to discharge all claims for the tort and operates to discharge others also liable for the same harm." The release in the case at bar satisfied both these tests. Its preambles recited among other things that "the parties desire to dismiss and compromise the stockholders derivative action" (the Michigan suit) "and to resolve all of the controversies raised by the allegations of the amended complaint." Again, "the plaintiffs deem it in the best interest of Kaiser-Fraser * * * that the stockholders derivative action be dismissed and compromised upon the terms and conditions hereinafter set forth." The operative words of release included "all claims, charges and allegations set forth in the amended complaint and the notice to amend and supplement the amended complaint." Finally, the parties clearly meant to put an end to any claim against Brown for the release included him, eo nomine; indeed it appears that he was omitted as a defendant to the action only because his presence would destroy the jurisdiction of the court.

Although the Michigan judgment does not estop the plaintiff in this action from

---

1. McKenna v. Austin, 77 U.S:App.D.C. 228, 134 F.2d 659, 664, 148 A.L.R. 1253.

2. Restatement of Torts, Vol. 4, § 885, Comment (d).

attacking the validity of the release as to Brown, and although the district court would therefore be free to decide that it should be set aside, it would still be obliged to dismiss the complaint because the release of the other directors would remain unscathed. The situation might be different if the Michigan judgment had been on the merits of the claim; I need not say whether such a judgment would release Brown. The corporation had actually executed the release, and the Michigan judgment did no more, and needed to do no more, than decide that the consent so given was not vulnerable to any attack by the releasor. That enabled Brown to invoke the doctrine I mention.

FRANK, Circuit Judge, concurs in Judge HAND's opinion.