**BRESWICK & CO.** and Myron Neisloss, as stockholders of Alleghany Corporation and on behalf of themselves and all other stockholders similarly situated, Plaintiffs,

v.

**O. Henry BRIGGS,** Thomas J. Deegan, Jr., Walter W. Foskett, Henry J. Guild, Allan P. Kirby, Herman R. Neff, Andrew Van Pelt, Robert R. Young, Clint W. Murchison, Sid W. Richardson, John D. Murchison, Clint W. Murchison, Jr., Murchison Brothers and Alleghany Corporation, Defendants.

United States District Court
S. D. New York.
Sept. 28, 1955.

Rosston, Hort & Brussel, New York City (George Brussel, Jr., Eugene G. King, Joseph B. Hyman, New York City, of counsel), for plaintiffs.

Lord, Day & Lord, New York City (Thomas F. Daly, Saul L. Sherman, New York City, of counsel), for defendants Alleghany Corporation, O. Henry Briggs, Thomas J. Deegan, Jr., Walter W. Foskett, Henry J. Guild, Allan P. Kirby and Herman R. Neff.

Satterlee, Warfield & Stephens, New York City (William E. Stockhausen, New York City, of counsel), for defendants John D. Murchison, Clint W. Murchison, Jr., Murchison Brothers and Sid W. Richardson.

Peter George Martin, New York City, for defendant Alleghany Corporation in Zenn, et al. v. Anzalone, et al.

Pomerantz, Levy & Haudek, New York City (Abraham Pomerantz, New York City, of counsel), for plaintiffs in Zenn, et al. v. Anzalone, et al.

WALSH, District Judge.

Plaintiffs in this derivative action in the right of Alleghany Corporation, move for summary judgment as to five of the seven counts alleged in their complaint and for a stay of proceedings in the New York State Supreme Court to approve a settlement of substantially the same causes of action, negotiated by defendants and counsel for other groups of stockholders.

Defendants move to consolidate this action with the other derivative actions already consolidated in this court and for the designation of the general counsel in those actions as general counsel for the consolidated action.

**400**

### Summary Judgment

Alleghany is a holding company devoted to investments in other enterprises. Defendant Young is Chairman of its Board of Directors. Defendant Kirby is its President. Several other defendants are its officers and directors. Defendant Murchison and his sons and defendant Richardson hold no office in Alleghany but as private investors have dealt with it in several of the transactions included in the complaint.

Plaintiffs' claims grow out of three principal transactions:

 (1) The New York Central Railroad proxy fight of 1954;

 (2) A proposed new issue of Alleghany preferred stock;

 (3) Alleghany's relinquishment of control of Investors Diversified Services, Inc. by exchanging its voting stock for non-voting stock held by the Murchisons.

Plaintiffs allege that these acts and omissions violated the Investment Company Act, and that they are in derogation of the common-law obligation of corporate directors and those acting in concert with them.

Common to all counts is the question of whether Alleghany is an investment company subject to the Investment Company Act or excluded from its operation by Section 3(c) (9) because it is a "person authorized to control a carrier" subject to regulation under Section 5(3) of the Interstate Commerce Act. The defendants during the period in question have admittedly acted upon an assumption that Alleghany was not subject to the Investment Company Act and they urge as a defense that this is in fact correct and further that in any event they in good faith believed that it was. As a matter of law they were wrong and it will simplify the discussion of the motions if these defenses are disposed of first.

Admittedly Alleghany was not subject to the Investment Company Act from 1945 to January 19, 1954. With the authorization of the Interstate Com-

merce Commission it held control of the Chesapeake & Ohio Railroad. The Securities and Exchange Commission had recognized its status and terminated its registration as an investment company.

■ On January 19, 1954, however, Alleghany sold its interest in the C. & O., the only carrier of which it had control. From then until May 26, 1954, it admittedly had control of no carrier. Since May 26, 1954, defendants claim Alleghany in fact controls the New York Central but concededly there has been no order of the I.C.C. authorizing this control if in fact it exists. An order of the I.C.C. which obliquely attempted to validate Alleghany's claim to exemption from the Investment Company Act was temporarily stayed by a three-judge court in Breswick & Co. v. United States, D.C., 134 F.Supp. 132, Per Dimock, D. J., and is presently *sub judice*. Although further action by the I.C.C. may in the future establish Alleghany as a person authorized to control a carrier pursuant to Subdivisions (2) and (3) of Section 5 of the Interstate Commerce Act, this cannot dispose of the claim that at the time of the acts and omissions alleged, Alleghany was subject to the Investment Company Act.

■ Defendants claim they relied on the continuing effect of the I.C.C. and S.E.C. orders even though they, of course, knew that the sale of the C. & O. terminated the only fact upon which these orders were based. That these orders had in law no effect after January 19, 1954, the date of the sale of the C. & O., was more fully explained in Breswick & Co. v. United States, supra. It now seems to me that, as a matter of law, their lack of legal effect was so obvious that professed reliance upon them in good faith is patently frivolous.

The I.C.C. order determining Alleghany's status upon the basis of its control of C. & O. contained the usual language of a regulatory order that it continues until changed by subsequent order. Even though Alleghany's acceptance of such an order might estop it from noncompliance, there is no basis

for concluding that it could shield Alleghany from complying with the Investment Company Act. There was nothing actually inconsistent between Alleghany's submitting required reports to the I.C.C. and complying with the Investment Company Act too. And if in fact its compliance with the Investment Company Act did produce any conflict this would have led to the prompt termination of the I.C.C. order.

██ The S.E.C. order did not even by its terms purport to exempt Alleghany from compliance with the Investment Company Act. This order provided:

"It is hereby declared that Alleghany Corporation has ceased to be and is not now an investment company within the meaning of the Investment Company Act of 1940; and

"It is ordered that the registration of Alleghany Corporation under the Investment Company Act of 1940 shall forthwith cease to be in effect, provided, however, that if in the future Alleghany Corporation ceases to be subject to regulation under the Interstate Commerce Act as set forth in such Findings and Opinion, this order may be revoked, suspended or modified after appropriate notice and opportunity for hearing."

It is no more than a finding that on the date of promulgation Alleghany was not an investment company and an order that its registration should "cease to be in effect". The proviso merely reserved the S.E.C.'s right to change the order by proceeding brought on its own motion. It did not absolve Alleghany in perpetuity from its obligation of voluntary compliance with the law as circumstances changed.

Accordingly the application for summary judgment is considered with recognition that during the period in question Alleghany was not conforming to the

Investment Company Act and it had no basis in good faith for failing to do so.

## The New York Central Proxy Fight (First, Second and Sixth Counts)

During the months before the annual meeting of New York Central on May 26, 1954, while defendants Young and Kirby prepared for their successful proxy fight to elect a Board of Directors for the Central, Alleghany Corporation took certain action which was instrumental to this ultimate success. The dispute centers on plaintiffs' contention that these acts were pursuant to a conspiracy to use the corporate facilities of Alleghany for the personal gain of Young, Kirby, the other defendant directors, and their alleged affiliates, the Murchison group and Richardson. The undisputed facts are:

(a) The market price of New York Central stock increased substantially between December 1, 1953 and June 14, 1954. Young and Kirby bought 200,000 shares of Central stock in December, 1953, but prior to June 14, 1954 they only acquired 11,400 shares for Alleghany.

(b) Alleghany loaned Murchison and Richardson $7.5 million without security to assist them in purchasing for themselves 800,000 shares of Central stock from Alleghany's former subsidiary, the C. & O.

(c) Alleghany committed itself to purchase from Murchison and Richardson 300,000 [1] of these shares at 25 (equal to or above the then market) at the option of Murchison and Richardson.

(d) Alleghany expended $1,369,775 to finance the successful proxy fight.

(e) Murchison and Richardson voted their stock in support of the nominees supported by Young and Kirby.

(f) These nominees were elected and they in turn elected Young,

---

1. The "Alleghany-Young-Kirby" proxy statement to stockholders of New York 

Central states 400,000. The complaint states 300,000.

Chairman of the Board of the Central.

Plaintiffs contend that these facts show that Young and Kirby appropriated for their personal benefit, business opportunities available to Alleghany and that they caused Alleghany to spend and lend its money in support of concerted action by Young, Kirby, the Murchisons and Richardson to take over the management of the Central for their personal benefit, Alleghany having so little stock that it stood to profit little from the victory. Plaintiffs also contend that the Murchisons and Richardson act with the defendant directors in concert to control Alleghany and that therefore the loan to Murchison and Richardson was a loan to affiliated persons and to persons in control, in violation of Sections 17(a)(3) and 21(b) of the Investment Company Act. Further they claim that the money advanced by Alleghany for the expenses of the proxy fight was a similarly prohibited loan.

In addition to the defense of reliance upon the orders of the I.C.C. and S.E.C., the answering affidavit of the defendant Young denies that Murchison and Richardson were acting in concert with Kirby and himself, or any of the defendant directors at the time of the loan to them of the money for the purchase of the New York Central stock. He denies that he or any of the defendant directors took advantage of a business opportunity available to Alleghany, claiming that whereas the investment in New York Central stock was a suitable speculation for Kirby and himself personally, it would have been unduly speculative for Alleghany. He further claims that if Alleghany had attempted to purchase more New York Central stock, it would have run up the market price of that stock. He does not explain why under these circumstances it was prudent for Alleghany to commit itself to purchase 300,000 shares of New York Central stock at the option of Murchison and Richardson. Similarly, he does not explain why the fear of raising the price of the stock which kept Alleghany out of the market did not also prevent Kirby and himself from acquiring their own large personal holdings. Nor does he dispel the possibility of a conflict in this regard between his personal venture and that of Alleghany.

■ The convincing or unconvincing quality of this affidavit is not a proper matter for consideration. It is enough that issues of fact are raised. Although many of the alleged transactions are not susceptible to dispute, issues of fact as to the reasons for their occurrence and the relationship between the individual defendants preclude summary judgment at this time. It is not enough that plaintiffs might establish a prima facie case by record transactions. Defendants are entitled to a full opportunity to present their defense and they cannot be compelled to meet these issues by affidavits. Subin v. Goldsmith, 2 Cir., 224 F.2d 753, Per Frank J.

## The New Issue of Preferred Stock (Third Count)

■ It is undisputed that Alleghany is in the process of issuing a new class of preferred stock to replace one of the classes already issued and that Alleghany is doing this without compliance with the Investment Company Act. It was this transaction which prompted the three-judge determination in Breswick & Co. v. United States, supra, reviewing an order of the I.C.C. authorizing this issue. The issue is already enjoined in that proceeding and, unless the validity of the I.C.C. order is re-established on final hearing, it will not go forward until it is approved by the appropriate administrative agency. This protection seems adequate, at least for the present, and there is therefore no need for an additional injunction issued in this proceeding. Judgment for damages resulting from noncompliance with the Investment Company Act should await final administrative action.

■ It is also undisputed that shortly before the plan for the issuance of the new stock was announced, defendant Young more than doubled his personal holdings of the old stock to be refunded,

increasing them from 5,179 shares to 11,087. Whether the defendant Young appropriated a corporate opportunity again presents an issue of fact, which may not be properly determined on a motion for summary judgment.

### Relinquishment of Control of Investors Diversified Services, Inc.
#### (Fourth Count)

It is undisputed that Alleghany has exchanged voting stock by which it controlled I.D.S. for nonvoting stock formerly held by the Murchisons. Plaintiffs claim that this was part of an agreement to get the support of Murchison and Richardson in the New York Central proxy fight. Defendant Young vehemently denies this and the Secretary of the Corporation, in his affidavit, states that the exchange was negotiated because Alleghany wished to be freed from its control of I.D.S. so that it could more easily pledge its stock as collateral. Obviously the true nature of this transaction presents an issue of fact for the trial.

Accordingly plaintiffs' motion for summary judgment must be denied.

### Stay of Settlement

Four days after the three-judge court in Breswick & Co. v. United States, supra, granted a preliminary injunction and expressed conclusions of law substantially helpful to plaintiffs' claim that Alleghany was subject to the Investment Company Act, defendants and counsel for another group of stockholders announced a stipulation of settlement to terminate the present action as well as all other derivative actions based upon the same alleged misconduct of the directors. This stipulation has been submitted to the New York State Supreme Court for its approval. Plaintiffs here seek a stay of the State proceedings upon the ground that the agreement of settlement was collusive.

The affidavits submitted do not establish collusion. The fact that the lawyer who represented Alleghany Corporation in executing this stipulation was closely associated with the law firm which represented the directors does not establish collusion. It is not to be expected that the lawyer representing the corporation will be unfriendly with the directors thereof or their counsel. The real adversary party expected to protect the interests of the stockholders is the lawyer who represents the stockholder group and although he did lend himself to a sharp maneuver by the defendants, there is no suggestion that he dealt with them at less than arms-length.

Nevertheless, the conduct of defendants was inequitable, and they should not be permitted to profit by it. There was no proper reason for excluding plaintiffs' counsel from the negotiations. Substantially all of the other derivative actions had been consolidated and the lawyer with whom the defendants negotiated the settlement had been designated as general counsel. In this sense, all of the other litigating stockholders were represented at the bargaining table, whereas the present plaintiffs, who perhaps had been the most vigorous and most successful in the litigation, were left out.

Defendants have indulged in confused overgeneralizations from the concept that the corporation rather than the active plaintiffs is the "real party in interest". As between defendants and plaintiffs, defendants owe the same legal duties they owe any other adversary in the courts, regardless of the derivative nature of the action. True, the "real party in interest" in all of the pending derivative actions is the corporation itself but the real parties *in litigation* are those stockholders who are undertaking the trouble and expense of establishing the rights of the corporation.[2] Although

2. If the conclusion expressed in this paragraph were wrong and the corporation were the real party in litigation as well as the real party in interest, it would then be most improper for it to be represented by counsel not in a position to deal aggressively against the directors, and the facts in this regard would require more searching exploration than the consideration they received on the argument of this motion.

their individual interests must always be subordinate to the corporation and the stockholders as a whole, this does not in any way lessen their right to procedural decencies from their adversaries, the defendants. Defendants in a derivative action therefore have no greater right to a judgment based upon settlement negotiated with some one other than the active plaintiffs than in any other action. Their attempt to use such a judgment is just as inequitable and merits the same repression by this court unless it can be shown that the supervening interest of the *corporation,* as distinguished from the defendants, somehow requires that the defendants be permitted to exploit such a judgment. Here no such showing was made.[3] By restraining defendants there is no injury to the corporation. If the State Court finds the settlement adequate it may be approved and any payment thereunder allowed in reduction of any recovery obtained by plaintiffs here.

█ This is in no way a departure from the now settled rule that a judgment after trial of one derivative action is *res judicata* as to all others based upon the same issues. Dana v. Morgan, 2 Cir., 232 F. 85. Nor from the extension of this rule to judgments based upon stipulations of settlement. Stella v. Kaiser, 2 Cir., 218 F.2d 64, 65–67; Gerith Realty Corp. v. Normandie Nat. Securities Corp., 154 Misc. 615, 276 N.Y.S. 655, affirmed 241 App.Div. 717, 269 N.Y.S. 1007, affirmed 266 N.Y. 525, 195 N.E. 183; Milvy v. Sperry Corp., Sup., 36 N.Y.S.2d 881. Cf. Winkelman v. General Motors Corporation, D.C., 39 F.Supp. 826. The sole thrust of this determination is against the persons of the defendants; they are not in equity entitled to utilize a judgment based upon a settlement negotiated behind the backs of the active plaintiffs

here. This is the equivalent of staying the execution of a judgment in the hands of a plaintiff without invalidating the judgment. See Western Union Telegraph Co. v. Tompa, 2 Cir., 51 F.2d 1032, 1034. Undoubtedly the realistic value of the judgment to the defendants will be greatly reduced but this is a risk they must have knowingly taken when they left the plaintiffs out of the settlement negotiations.

The defendants say that it is impossible to negotiate with all counsel when there are so many actions. The fact is that they need only have negotiated with two, the counsel for the present plaintiffs and general counsel for the others. If for any reason the number with whom they negotiated was to be further reduced to one, the appropriate method by which to accomplish this was by a further motion for consolidation so that the general counsel with whom to negotiate could be designated by the court and not selected by the defendants.[4]

The fact that some of the actions were in the State Court and some in this court does not present an insuperable problem. If both courts concluded that the same lawyer should be designated as general counsel in both sets of proceedings, defendants could have proceeded to negotiate with him alone. If either court concluded that different lawyers should be designated as general counsel in the two sets of proceedings, this would amount to a finding that there was good reason why the defendants should conduct their negotiations with more than one person. It may be that in other derivative suits the number of actions or the distance between the courts would make it impracticable to insist upon consolidation and the appointment of a general counsel as a condition for the exclusion

3. Cf. Pergament v. Frazer, D.C.E.D.Mich., 93 F.Supp. 13, 20, affirmed Masterson v. Pergament, 6 Cir., 203 F.2d 315, in which settlement was approved in spite of exclusion of counsel for some active plaintiffs, the court being satisfied that these plaintiffs were motivated not by an interest in the corporation but by hostility to it. Here it is merely said that the actual plaintiffs are engaged in a proxy fight with the directors. This in no way suggests a lack of honest interest in the corporation nor does it justify the directors in trying to settle the case without them.

4. Actually a motion for this purpose was made before the settlement was announced but it was adjourned by consent and is still pending. Plaintiffs, however, did not know of the settlement negotiations until they were announced.

of active parties from settlement negotiations. Cf. Pergament v. Frazer, D.C., E.D.Mich., 93 F.Supp. 13. But that is not the case here. It is highly important that the defendants not have the power to choose among the counsel representing the stockholders the one with whom they will deal. Neither should they have power to halt the progress of a case which is moving rapidly and constructively in one court by compelling the concentration of attention upon a settlement submitted in another where that settlement is not negotiated with the active parties to that case. In this regard I follow the view of Judge Allen in Masterson v. Pergament, supra. Nothing in Stella v. Kaiser, supra, 218 F.2d 64, is inconsistent with this view. The issues of fraud and inequity as to the conduct of the settlement negotiations in that case were concluded in another court.

It is said that any question of inequity may be raised in the State Court and urged as a basis for disapproving the proposed settlement. This is true but it would compel plaintiffs who have been proceeding successfully here to halt and either seek to intervene in the State action or appear with the lesser stature of a protesting stockholder. In either case they would be required to subject themselves to the order of the State Court to be heard on the very limited issue tendered by the defendant—whether this particular settlement agreement should be approved. They would then be precluded by the State judgment. Stella v. Kaiser, 2 Cir., 218 F.2d 64, 65. Actually plaintiffs have no opportunity to participate in the negotiation of the settlement now before the State Court and there is no way in which that opportunity can be given to them without throwing the entire agreement open to renegotiation. Their ability to urge the Supreme Court not to approve the settlement is no substitute for the right to be represented in its negotiation. In any event, the primary responsibility for the fair treatment of the litigants before this court is here. Western Union Telegraph Co. v. Tompa, supra, 51 F.2d 1032, 1034.

To enjoin the defendants from proceeding in the State Court would perhaps be within the general statutory prohibition against enjoining proceedings in a State Court, 28 U.S.C.A. § 2283. Such an injunction is not necessary. Plaintiffs can be protected by enjoining defendants from using as a defense in this action, any judgment which may be entered upon a stipulation of settlement not negotiated with the present plaintiffs or their representatives. In this way there is no interference in the State Court proceedings nor is any doubt cast upon its judgment, but these defendants are precluded from taking inequitable advantage of their unconscionable conduct in attempting to bind their adversaries by a settlement to which they were not parties.

In Wells Fargo & Co. v. Taylor, 1920, 254 U.S. 175, 41 S.Ct. 93, 98, 65 L.Ed. 205, the Supreme Court upheld the power of a District Court to enjoin the inequitable use of a judgment obtained by a plaintiff in disregard of a contract. The court in explaining the existence of this power found it as an incident of the well-recognized power to enjoin the execution of a judgment based upon fraud, accident or mistake. Yet the judgment enjoined from execution in the Wells Fargo case was not based upon fraud, accident or mistake. Its execution was enjoined simply because plaintiff in obtaining it had acted in disregard of his contractual obligation to a third person. He was an employee of the Wells Fargo Express Company. He had by his contract of employment expressly stipulated that neither the railroad nor the express company should be liable for any injury due to a railroad accident. Nevertheless, after being so injured he successfully recovered a State Court judgment against the railroad company and it in turn commenced an action for indemnity under its contract with the express company. Finding that the express company could not recoup from the employee because he was not financially responsible, the District Court enjoined the employee from executing his State Court judgment against the railroad. The concluding

sentence of the opinion of the Supreme Court is:

"In these circumstances, that company is entitled in equity and good conscience, as is shown by the cases before cited, to a decree holding him to his agreement and depriving him of his present inequitable advantage, and to that end enjoining him from collecting the judgment."

Although in the Wells Fargo case the express company had unsuccessfully attempted to intervene in the State action against the railroad, this distinction has not been made in cases following that decision. It has been held that persons may protect themselves against the inequitable use of a judgment by application to either the Federal Court or in the court in which the judgment was entered. See, Western Union Telegraph Co. v. Tompa, supra, 2 Cir., 51 F.2d 1032, 1034. See also National Surety Co. v. State Bank, 8 Cir., 120 F. 593, 61 L.R.A. 394; Joseph Reid Gas Engine Co. v. Exchange Nat. Bank, D.C.W.D.La., 281 F. 847; Seay v. Hawkins, 8 Cir., 17 F.2d 710, 713.

■ It may also be thought that at this time an injunction is premature because there is no certainty that the State Court will approve the stipulation of settlement. We do know, however, that defendants intend to use the judgment as a defense here if they can; they have so informed the court. This is adequate basis for action now. It is also desirable that the parties know the disposition of this court to prevent any unfair surprise. In Western Union Telegraph Co. v. Tompa, supra, 2 Cir., 51 F.2d 1032, 1035, the Court of Appeals for this Circuit said:

" * * * The fact that a federal court of equity is prevented, by the limitation imposed by the above statute, from granting complete relief, should not be taken as an excuse for not doing presently what will eventually have to be done if the threatened injury to the plaintiff

should become more imminent in the event that the defendant does recover a judgment against the railroad. Indeed, the difference between the threat now of unlawful injury from such a judgment and what it will be if the defendant prevails in her state suit is only one of degree. It is too plain for discussion that her real purpose and intent is not only to obtain a judgment against the railroad, but to collect it. We cannot prevent her doing all she can to obtain one, but, since it already appears that it will inevitably be against equity and good conscience to permit her to collect it, we will now grant such relief as we think the statute permits by enjoining her from doing anything to enforce any judgment she may obtain and leave her otherwise free to proceed as she may be advised."

Accordingly, defendants are enjoined from interposing in this action any defense based upon a judgment entered pursuant to an agreement not negotiated with plaintiffs or their counsel.

## Consolidation

■ Defendants move for consolidation of the present action with the other derivative actions pending in this court.

Several derivative actions were begun at about the same time in 1954 in both the State Courts and this court. The plaintiffs in the present action did not commence a State Court proceeding and they were one of the last groups of stockholders to sue. They are not parties to any action pending in the State Court or any of the other derivative actions pending in this court. They were the first and only litigants to develop the contention that during the period in question Alleghany was subject to the Investment Company Act.[5]

Plaintiffs in the other derivative actions and the defendants ask that the lawyer designated as general counsel in those actions be designated as general

---

5. In Schepis v. Briggs, et al., an action started in the New York State Supreme Court, Kings County, it was alleged that defendants acted in violation of the Investment Company Act but the claim differed in other respects from that of the present plaintiffs and no steps were taken to develop that claim.

counsel for the proposed consolidated action. He is a lawyer of extensive experience in this type of litigation but in the argument of these motions he showed less than a full comprehension of the proceedings which plaintiffs have conducted. Indeed, he characterized their efforts in this action as "abortive" on the shallow basis that their original application for a preliminary injunction had been denied notwithstanding that this application gave rise to plaintiffs' so far successful prosecution of Breswick & Co. v. United States, supra, and the establishment of important propositions of law. To place this action under his control seems hardly fair to plaintiffs, particularly after he has already committed himself to a settlement based in part upon an incomplete evaluation of their efforts.

The application for consolidation is denied without prejudice to its renewal after the conclusion of the proceedings in the State Court for the approval of the proposed stipulation of settlement. At that time the desirability of consolidation and the terms and conditions under which it should be effected may be better determined.

Settle order on notice.