**BRESWICK & CO.** and **Myron Neisloss,** as stockholders of Alleghany Corporation and on behalf of themselves and all other stockholders similarly situated, Plaintiffs,

v.

**O. Henry BRIGGS et al., Defendants.**

United States District Court
S. D. New York.

Feb. 27, 1956.

Rosston, Hort & Brussel, New York City, for plaintiffs and Clarence W. Bailey, proposed intervenor. George Brussel, Jr., and Eugene G. King, New York City, of counsel.

Lord, Day & Lord, New York City, for defendants Briggs, Deegan, Foskett, Guild, Kirby, Neff, Young and Alleghany Corp., Thomas F. Daly and Saul L. Sherman, New York City, of counsel.

Satterlee, Warfield & Stephens, New York City, for defendants Clint W. Murchison, Sid W. Richardson, John D. Murchison, Clint W. Murchison, Jr., and Murchison Brothers, F. W. H. Adams, New York City, of counsel.

BICKS, District Judge.

This is a stockholders' derivative action against members of the Board of Directors of the Alleghany Corporation and certain other individuals. It is one of several similar suits in this Court and in the New York State Supreme Court arising principally out of the activities of the individual defendants in their successful campaign for control of the New York Central Railroad in 1954.

Clarence W. Bailey, a holder of record of 30,000 shares of common stock of de-

fendant, Alleghany Corporation, the market value of which exceeds $250,000, has moved, pursuant to Rule 24(a) (2) and Rule 24(b) (2) Fed.Rules Civ.Proc., 28 U.S.C.A., for leave to intervene. The exhaustive and learned opinion of Judge Walsh [1] and the order made herein by Judge McGohey under date of December 19, 1955, supply the background against which this application is to be determined.

Judge Walsh enjoined the defendants "from using as a defense in this action, any judgment which may be entered upon a stipulation of settlement [in the State Court] not negotiated with the present plaintiffs or their representatives." "In this way * * *," he stated, "these defendants are precluded from taking inequitable advantage of their unconscionable conduct in attempting to bind their adversaries by a settlement to which they were not parties." 135 F. Supp. at page 405.

Judge McGohey's order,[2] entered subsequent to the injunction granted by Judge Walsh, directs the plaintiffs to file on or before April 1, 1956 a surety bond or other acceptable security in the sum of $25,000 for the purpose of securing the corporate defendant for the reasonable expenses which may be incurred by it and for which it may become subject pursuant to Article 6–A of the General Corporation Law of the State of New York, McK.Consol.Laws, c. 23, in the defense of Count Seven of the Amended Complaint, and further, "that in the event that plaintiffs effect joinder in this action of stockholders holding 5% of the outstanding shares of the common stock of the defendant, Alleghany Corporation, or shares of the common stock of said defendant having a market value in excess of $50,000 plaintiffs may make an appli-

---

1. Breswick & Co. v. Briggs, D.C.S.D.N.Y. 1955, 135 F.Supp. 397.

2. This order was made on defendants' application for security for costs in the sum of $160,000 and for a stay of all proceedings, particularly examinations of the defendants Young, Kirby and Alleghany Corporation, until a bond in that

sum was posted. Not by way of criticism, "but merely to point up the real issue here", Judge McGohey observed "* * * it is clear that the defendants want a stay of the examinations much more than they want security for their costs in defending the action." Breswick & Co. v. Briggs, D.C., 136 F. Supp. 301, 302.

cation to vacate so much of this order as requires them to furnish security * * "

Shorn of all legalistic conceptualism, the motivation behind the proposed intervenor's application is a desire to have the case progress to a disposition on the merits and the defendants' opposition, an effort to frustrate that objective.

Plaintiffs assert that they are unable to satisfy Judge McGohey's order in any manner other than by joinder of additional stockholders. Defendants' arguments in opposition, logically extended, would preclude intervention by any stockholder. Denial of the present application, therefore, would effectively, albeit obliquely, achieve the very result Judge Walsh indicated was undesirable. "It is highly important", said he, "that the defendants not have the power to choose among the counsel representing the stockholders the one with whom they will deal. Neither should they have power to halt the progress of a case which is moving rapidly and constructively in one court by compelling the concentration of attention upon a settlement submitted in another where that settlement is not negotiated with the active parties to that case." 135 F.Supp. at page 405.

With the vast expansion of business units in corporate form and the anomalous lack of substantial identity between management and ownership thereof, stockholders' derivative actions serve a vital need and have great value, both public and private. See Brendle v. Smith, D.C.S.D.N.Y.1942, 46 F.Supp. 522; Carson, Current Phases of Derivative Actions Against Directors, 40 Mich.L.Rev. 1125, 1127 (1942); Simpson, Fifty Years of American Equity, 50 Harv.L.Rev. 171, 191 (1936); Zlinkoff, The American Investor and the Constitutionality of Section 61–B of the New York General Cor-

poration Law, 54 Yale L. J. 352 (1944). "This remedy born of stockholder helplessness was long the chief regulator of corporate management and has afforded no small incentive to avoid at least grosser forms of betrayal of stockholders' interests. It is argued, and not without reason, that without it there would be little practical check on such abuses." Cohen v. Beneficial Indus. Loan Corp., 1949, 337 U.S. 541, 548, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528.

■ Section 61–b of the New York General Corporation Law was enacted to curb so-called "strike suits" [3] brought not to redress real wrongs but to realize upon their nuisance value.[4] It contemplates that a plaintiff may be relieved of the requirement of posting security if additional persons, whose stockholdings together with those of the plaintiff equal 5% of the outstanding shares of any class of the corporation's stock or have a market value in excess of $50,000, join in the litigation.[5] Baker v. MacFadden Publications, 1950, 300 N.Y. 325, 90 N.E.2d 876. It would seem that the defendants seek to have the statute applied here not to obtain indemnity for their expenses, but to obtain relief from the consequences of their own conduct—a result clearly not within the intendment of the statute.

■ Defendants construe Judge Walsh's opinion as contemplating that only the plaintiffs who initiated the instant suit are entitled to the benefits of the injunction order. They argue, in effect, that he intended to create a limited, privileged group of stockholders whom he vested with special rights available to them alone to the exclusion of all other stockholders. In so urging, defendants overlook that if a recovery is had in this action it will not be in favor of the stock-

3. A much abused and maligned appellation frequently employed by defendants in stockholders' suits.

4. See Public Papers of Governor Dewey (1944) page 255.

5. See ibid at 256. The Governor stated: "Even if the stockholder owns only a tiny percentage or only $5 worth of stock, it should be simple to bring an action without putting up security. If his action has any merit at all, it should be easy enough to interest others who do hold at least 5 per cent, or stock valued at $50,000."

holder plaintiffs but in favor of the corporation in whose right the suit is brought. All the stockholders of the corporation will participate in the recovery according to their respective stockholdings. Unlike the cases where a surcharge against a recreant fiduciary is limited to the amount necessary to redress the wrong suffered only by the objecting parties, Matter of Ellensohn's Estate, 2nd Dept. 1939, 258 App.Div. 891, 16 N.Y.S.2d 247; Matter of Dempsy's Estate, 2nd Dept. 1940, 259 App.Div. 1083, 21 N.Y.S.2d 8; Matter of Mette's Estate, 2nd Dept. 1948, 273 App.Div. 740, 80 N.Y.S.2d 221, affirmed, 1948, 298 N.Y. 789, 83 N.E.2d 475, the recovery in a stockholders' derivative suit is full restitution for the wrong done to the corporation and redounds to the benefit of all the stockholders without regard to whether they were participants in the litigation. Clarke v. Greenberg, 1947, 296 N.Y. 146, 71 N.E.2d 443; Horowitz v. Balaban, D.C.S.D.N.Y.1949, 112 F. Supp. 99.

The defendants have pointed to the opinions of two of my brethren in support of their general contentions. Neither can be said to sustain their position. In one, rendered November 1, 1955 which was prior to the order requiring plaintiffs to post security, Judge Clancy denied an application by a stockholder for leave to intervene. He was not faced, as is the Court upon the instant application, with the alternative of permitting intervention or pronouncing a sentence of death on the suit. In the other, Judge Sugarman denied intervention in a separate suit in which there was a total absence of the problems presented herein.[6]

■ Defendants' contention that intervention in this suit by any stockholder is precluded, is not sound. The issue then remains whether stockholder Bailey's application should be granted either as a matter of right or of discretion.[7]

Rule 24(b), F.R.C.P. authorizes the Court to permit intervention when the applicant's claim or defense and the main action have a question of law or fact in common. Here, the existence of common questions of law and fact is not disputed. The Rule provides that in exercising its discretion the Court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. It is not seriously contended that granting the application will result in delay nor make for confusion for Bailey and the original parties plaintiff appear by the same counsel and no new issues are sought to be injected. Denial of the application will be prejudicial, indeed well nigh fatal, to the plaintiffs. Granting the same will sustain vitality in a suit which might otherwise come to an end without a determination on the merits. If that constitutes prejudice to the defendants, the Court cannot take cognizance thereof.

■ Defendants have moved to examine Bailey in this jurisdiction concerning the circumstances surrounding the making of his application. In their brief they urge that if the Court is not prepared to deny the motion forthwith the decision thereon should be stayed pending completion of the examination. The nature of the information sought to be elicited, in the main, is of a character which demonstrates that the examination is unnecessary for the purpose of the motion *sub judice*. It would seem that the defendants' principal objective is to demonstrate to Bailey the futility of the litigation under certain circumstances, even if successful, and that if he becomes a party plaintiff, he may incur liability for costs. It ill becomes an accused wrongdoer to constitute himself the guardian and counsel of his accuser and to attempt to dissuade him from proceeding with his effort to redress an al-

6. Zenn v. Anzalone, D.C., Civil No. 92–205, January 5, 1956.

7. In view of the Court's disposition of this application it is not necessary to consider whether the applicant for intervention can validly claim intervention as of right.

leged invasion of his rights. The assertions that the applicant for intervention is not acting in good faith are bottomed on the suggestion that an adjudication on the merits finding that one or more of the defendants was guilty of wrong doing may not enure to the benefit of the corporate defendant. A satisfactory demonstration of that result has not been made.

Motion for leave to intervene granted. Cross motion for examination of proposed intervenor denied.