Marvin CHERNER and Cherner Clothing Co., a Partnership, by K. Cherner, Rachael Cherner, and Marvin Cherner, Partners, on behalf of themselves and as respresentatives of all other persons similarly situated,

v.

TRANSITRON ELECTRONIC CORPORATION, David Bakalar, Leo Bakalar, Hylan Freed, Wilbar Whittemore, Paul H. Messer, Russell Baker, and Merrill Lynch, Pierce, Fenner and Smith, Incorporated.

Civ. A. No. 61-857.

United States District Court
D. Massachusetts.

Feb. 5, 1962.

Louis Loss, Cambridge, Mass., James D. St. Clair, Boston, Mass., Jacob Green, Boston, Mass., Marvin Cherner, Birmingham, Ala., for plaintiffs.

Harold M. Willcox, Herrick, Smith, Donald Farley & Ketchum, Brooks Potter, James C. Heigham, Choate, Hall & Stewart, Boston, Mass., for defendants.

WYZANSKI, District Judge.

Purchasers of 200 shares of the stock of the defendant Transitron bring this action under the Securities Act of 1933. The first two counts of the amended complaint rest on § 11 of the Act (15 U.S. C.A. § 77k) and on a statement in each of the two registration statements filed with the Securities and Exchange Commission that Transitron "holds no patent licenses from others requiring the payment of royalties and knows of no patent rights of others which might interfere with the conduct of its business." The other two counts rest on § 12(2) of the Act (15 U.S.C.A. § 77l(2)) and a like

statement in the prospectus. Counts 1 and 3 are brought on behalf of the plaintiffs, Counts 2 and 4 purport to be what are sometimes called spurious class actions under F.R.Civ.P. Rule 23(a) (3), 28 U.S.C.A. The particular classes the plaintiffs claim to represent are described as follows:

"All persons who have bought any shares of common stock of Transitron since December 8, 1959, either from any of the underwriters or dealers who participated in either of the distributions covered by the two registration statements herein referred to or in the open market, \* \* \*." (Count 2)

and

" \* \* \* all persons to whom defendant [Merrill Lynch] has sold any shares of Transitron since December 8, 1959, by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of either of the prospectuses herein referred to (the said persons not knowing of the alleged untruths or omissions) \* \* \*" (Count 4)

The action is presently before this Court on Merrill Lynch's motion for early assignment for trial, Transitron's motion for an order establishing an expedited schedule for further proceedings including trial and plaintiffs' motion "for production of documents under [F.R.C.P.] Rule 34 and for order directing or authorizing notice to members of class under [F.R.C.P.] Rule 23." The specific relief sought in this last motion is an order (1) requiring Transitron to produce and to permit plaintiffs to inspect or copy "a list of all persons who now hold of record, or who have held of record at any time since December 9, 1959, any of the shares of the common stock of Transitron"; (2) requiring Merrill Lynch to produce and to permit plaintiffs "to inspect and copy, a list of all persons to whom the said defendant has sold any shares of common stock of Transitron as principal since December 9, 1959"; and

(3) "directing or in the alternative authorizing plaintiffs to give notice" of this action to the classes they claim to represent.

For present purposes, this Court assumes that the spurious class actions alleged in Counts 2 and 4 are properly pleaded under Rule 23(a) (3). See Independence Shares Corp. v. Deckert, 3rd Cir., 108 F.2d 51, 55, rev'd on other grounds, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189; Oppenheimer v. F. J. Young & Co., Inc., 2nd Cir., 144 F.2d 387. Cf. York v. Guaranty Trust Company, 2nd Cir., 143 F.2d 503, 528–529, rev'd on other grounds, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079; Zahn v. Transamerica Corp., 3rd Cir., 162 F.2d 36, 49. If Gilbert v. Clark, D.Mass., 13 F.R.D. 498, 499, be construed as reaching a different conclusion, it is contrary to the weight of authority and may no longer be regarded as binding, even in this District. Of course, nothing said in this paragraph conflicts with the opinion of Judge A. N. Hand in Oppenheimer that "If it shall later appear that the plaintiffs are not able within a reasonable time to obtain others to intervene in the class action it [the count setting forth the spurious class action] may properly be dismissed as a class action because of lack of adequate representation of members of the class." (144 F.2d page 390). For present purposes, this Court also assumes that under the present version of the Federal Rules of Civil Procedure a court in which a spurious class action has been pleaded has the *power* to order at any stage of the case that notice of the pendency of the action be given to "absent persons that they may come in and present claims and defenses if they so desire." Moore, Federal Practice Rules and Official Forms (1961) 562–564.

But even on these assumptions, this Court, as a matter of discretion, denies plaintiffs' motion "for production of documents under Rule 34 and for order directing or authorizing notice to members of class under Rule 23." The reasons for the Court's exercise of its discretion follow.

1. Despite plaintiffs' contentions to the contrary, this Court does not regard them or their counsel as having any fiduciary duty to notify potential members of the spurious class of this litigation and of their opportunity here to intervene. "These plaintiffs are not their brothers' keepers." Hormel v. United States, So.D.N.Y., 17 F.R.D. 303, 305. Ordinarily the primary duty of counsel is to his own client. His obligation, like that of his client, may in some situations require him to give notice to other interests which may be adversely affected by his prosecution of his own client's cause of action. But the bringing of the present suit, and any preliminary proceedings in connection with the taking of evidence prior to judgment, cannot legally prejudice other shareholders who might be in like case with his own client. No precedent supports the suggestion that the plaintiffs or their counsel have a moral duty to act as unsolicited champions of others. Without going so far as to agree with defendants' arguments that the proposed conduct of the plaintiffs or their counsel would be champertous, or would violate either Canon 27 or Canon 28 of the American Bar Association Canons of Professional Ethics, this Court concludes that at the present stage of the controversy (when there is no more reason to accept as true plaintiffs' declaration than defendants' answers,) Rule 23 should not be used "as a device to enable client solicitation." Bain and Blank, Inc. v. Warren Connelly Company, So.D. N.Y., 19 F.R.D. 108, 111.

2. If this Court were to grant plaintiffs' motion, the normal consequence would be that many persons would incorrectly infer that this Court regarded the plaintiffs' complaint as *prima facie* well-founded and had required a prompt notice to all who had been victimized so that they might not by delay or inaction lose valuable rights.

3. There is no likelihood that a failure on the part of this Court to allow their motion will lead others not to file claims within the period of limitation provided by statute. Nor is it any part of this Court's duty to awaken anyone who is sleeping through the period of limitation set by Congress. Moreover, it would not be appropriate for this Court to sound the alarm. Two alternative assumptions are possible. One assumption is that Congress, by implication, has provided that the statute of limitations is tolled in its application to others by the bringing of this spurious class action by the plaintiffs. If this be the correct assumption, then there is no need for anyone to notify those others of the prosecution of this suit. The alternative assumption is that Congress, by implication, has provided that the statute of limitations is not tolled in its application to others. If this be the correct assumption, then it would appear that the reason why the statute is not so tolled is because as a matter of public policy Congress impliedly concluded not to extend the period of suit for the benefit of dilatory plaintiffs merely because another plaintiff in like case had chosen promptly to bring to book a defendant. If it was the Congressional intent not to toll the statute, then this Court should not by some indirect maneuver, such as circularizing potentially dilatory persons, seek to circumvent that Congressional policy.

4. Counsel for plaintiffs argue that if this Court fails at this early stage in the case to bring the litigation to the attention of persons who might choose to join as plaintiffs in this spurious class suit, this Court will diminish the deterrent effect which Congress sought to accomplish when it enacted § 11 and § 12 of the Securities Act. The contention is that it was the Congressional purpose to give individuals rights of action under those sections, not merely so that personally they might recoup whatever losses they had suffered, but also so that wrongdoers might effectively be punished. Furthermore, it is suggested that the plaintiffs' counsel is, as he described himself, a private, albeit reluctant, Attorney General. Not to allow him to act for all who have suffered, he claims, will mean that he can hardly effectively act even for the suffering plain-

tiffs who have sought his aid. Those who already have come to him for assistance have limited potential recoveries, and presumably limited funds for vindicating their rights. Unless they, or their representative, can call to their aid at an early stage other alleged victims who will combine their resources with his initial clients, counsel will not have at his disposal financial resources for the effective prosecution of the claims of his original clients. Lacking outside resources, he will either be forced to abandon their allegedly meritorious claims or will be in an unequal battle with a suppositiously wicked wrongdoer. Many replies are available to demolish this argument. First, Congress has not affirmatively indicated that its policy of deterring wrongdoers and aiding the wronged is intended to reach anything like so far as suggested by plaintiffs' argument. To go to the extent plaintiffs suggest would run counter to the doctrine centuries old that neither counsel nor their clients should stir up litigation. It would substitute for the traditional restraints familiar to the profession a social welfare theory placing less emphasis than has been customary upon the frugal use of legal process and more emphasis than has ever been expressly contemplated upon the use of courts as social agencies to set aright whatever is out of joint. Second, for the courts to act in this anomalous role of guardians of those who do not on their own bring their controversies to court, would be inconsistent with the attitude already announced by the Securities and Exchange Commission, the administrative agency peculiarly equipped to operate in this intricate field. The S. E. C. has made it clear that it does not regard its function as including the presentation to courts of restitution and like claims of individuals who have been injured by violators of the Securities Act. Cf. Loss, Securities Regulation, vol. III, p. 1824 et seq. The inaction of the S. E. C. in such matters has not met with any Congressional correction. When Congress silently acquiesces in the inaction of the administrative agency, most experienced in this area and most familiar with the policy considerations, it would be a rash court which would act. To do so would be to assert a judicial leadership to fill a vacuum deliberately left by the executive and legislative branches of the government.

5. While the case at bar raises issues specifically related to the securities field, the plaintiffs' principle would have, if sound, terrifyingly broad application. The principle would imply that if an employee brought a spurious class suit against his employer with respect to an alleged violation of the Wage and Hour Act, a court at the outset of the litigation should authorize that employee's counsel (on the theory that a single employee could hardly bear the cost and other burdens of the litigation) to circularize the perhaps thousands of other employees who had claims resting upon similar factual and legal bases. Parallel situations would exist with respect to counsel who represented a single taxpayer, or a single social security pensioner, or a single person affected by a restraint of trade, or a single person having a claim against the government under an insurance policy. Hormel v. United States, So.D.N.Y., 17 R.F.D. 303, dealing with this last possibility, convincingly shows that the principle is unsound.

I make no comment upon another issued touched upon in the arguments at bar, whether if plaintiffs' counsel on his own motion solicits cooperation from others, he will be in violation of any law or canon. It is not my function to give advisory opinions. The high character of the lawyers appearing in this case for all parties would make it gratuitous for me to give them instructions on matters where the traditions of the bar and their own professional standards are the best guarantee that they will act without just cause for reproach.

Both Merrill Lynch, by its motion for early assignment for trial, and Transitron, by its motion for an order for a schedule expediting further proceedings, have indicated that they wish prompt trial. I am prepared to meet

their wishes and, subject to any reasonable request for postponement, I set the matter down for trial Monday, March 5, 1962,—a date which presumably will permit the taking of evidence, the presentation of arguments, the rendering of a verdict, and the filing of a judgment at least on issues of liability before any statute of limitations will bar others in like case with the plaintiffs.