Marvin **CHERNER** et al.

v.

**TRANSITRON ELECTRONIC CORPORATION**, et al.

Civ. A. No. 61–857–W.

United States District Court
D. Massachusetts.

Jan. 24, 1963.

Supplemental Memorandum
Jan. 28, 1963.

See also 221 F.Supp. 55.

James D. St. Clair, Hale & Dorr, Boston, Mass., Louis Loss, Cambridge, Mass., Jacob Green, Boston, Mass., Marvin Cherner, Birmingham, Ala., for plaintiffs.

Harold M. Willcox, and Robert E. Sullivan, Herrick, Smith, Donald, Farley & Ketchum, Brooks Potter, and James C. Heigham, Choate, Hall & Stewart, Boston, Mass., for defendants.

Milton Pollack, New York City, William Berger and Lawrence Milberg, New York City, for intervenors.

WYZANSKI, District Judge.

On December 26, 1962 this Court entered an order directed to all persons who prior to February 21, 1962 had purchased shares of Transitron Electronic Corporation to show cause why this Court should not approve an Agreement of Compromise and Settlement between plaintiffs and defendants in the following five lawsuits:

1. United States District Court for the District of Massachusetts, Cherner, et al. v. Transitron Electronic Corporation, et al., 201 F.Supp. 934;

2. United States District Court for the District of Massachusetts, C.A. No. 62–247–J–W, Financial Industrial Fund, Inc. v. Transitron Electronic Corporation, et al.;

3. Superior Court, New Castle County, State of Delaware, C.A. No. 398, Diversified Growth Stock Fund, Inc. v. Transitron Electronic Corporation, et al.;

4. Superior Court, New Castle County, State of Delaware, C.A. No. 406; One William Street Fund, Inc. v. Transitron Electronic Corporation, et al.;

5. Superior Court, New Castle County, State of Delaware, C.A. No. 407, Wellington Fund, Inc. and Wellington Equity Fund, Inc. v. Transitron Electronic Corporation, et al.

This Court has jurisdiction of only the first two of the five cases just cited.

Moreover, only the first of these cases, the Cherner case, purports to be in any aspect a class suit; and, therefore, it is only in connection with the Cherner case that this Court is called upon to consider whether to give approval to the proposed compromise. F.R.Civ.Proc., Rule 23(c).

In Cherner the action was initially filed on November 8, 1961, and an amended complaint was filed as a matter of course on November 20, 1961. The amended complaint pleaded in the alternative under §§ 11 and 12(2) of the Securities Act of 1933, 15 U.S.C. § 77k, 77$l$(2), the § 12(2) claim being limited to the defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. Because the complaint pleaded in the alternative under both sections, and each section was the subject of both an individual count and a *class* action under Rule 23(a) (3), there were four counts altogether. But the amended complaint rested entirely on a single substantive allegation: that the prospectuses which were the basic parts of two registration statements of the defendant Transitron, which became effective, respectively, on December 9, 1959, and November 17, 1960, in order to authorize secondary distributions, respectively, of 1,000,000 shares at $36 and 1,250,000 at $35 by the defendants David and Leo Bakalar (or members of their immediate families or family trusts), were materially false in stating that Transitron "holds no patent licenses from others requiring the payment of royalties and knows of no patent rights of other which might interfere with the conduct of its business."

After considerable discussions which counsel for Diversified Growth Stock Fund, Inc. had initiated with Cherner's counsel with a view to the possibility of intervening in the class action, in April 1962 that company and three other investment companies which had purchased a total of 250,000 shares filed three separate actions in the Delaware Superior Court. Those actions were similar to this action, except that (1) they were apparently based on § 11 alone, (2) they

did not seek to hold Merrill Lynch, the principal underwriter, and (3) they alleged, in addition to the patent matter, certain misstatements and omissions with respect to valuation of inventory and non-disclosure of prior deterioration in prices.

On March 30, 1962, Cherner's counsel had initiated a separate action in this Court on behalf of FIF (Civil No. 62–247) by filing a complaint which is identical with the amended complaint in this action except that it contained no class action counts and it demanded damages and rescission in respect of FIF's purchase of 50,000 shares from the defendant Merrill Lynch on November 18, 1960, at $35 per share. On April 16 the FIF complaint was amended as of course in order to add a third count which was directed to all the defendants other than Merrill Lynch, and which, on information and belief, alleged misstatements with respect to inventories, sales, prices and profits (hereinafter termed "the accounting allegations" for short) substantially along the lines of the similar allegations contained in the several Delaware complaints. However, since the complaint herein had already been once amended, a further amendment of this complaint along the same lines required an order of the Court, and a motion for such an order was denied on April 30, 1962, with leave to renew the motion after the Court's ruling on the defendants' pending motion for summary judgment on the patent question.

On August 6 the Court denied the defendants' motion for summary judgment, as well as their motion to strike the plaintiffs' jury claim. On September 25 the Court again denied the motion to amend the complaint, without prejudice to its later renewal. On the same day, in the FIF action, the Court denied the defendants' motion for partial summary judgment with respect to the third count (the one with the accounting allegations which had been added by amendment), as well as the motion which had been made in the alternative either to strike the third count or to suppress discovery concerning that count, although the Court sustained Transitron's written objections to FIF's interrogatories on Transitron's representation that it would submit much of the requested information in a different form (FIF reserving the right to resubmit interrogatories if it were not satisfied with the data submitted). And an October 19 the Court ordered in the present action that all issues as to whether there were misstatements or omissions in the registration statements with respect to the patent question be severed for separate trial prior to the resolution of any other issues.

At various times the Court has permitted 22 persons to intervene with claims in respect of 4,660 shares, and there are five pending motions to intervene on the part of purchasers of an additional 6,650 shares.

On December 26, the Court entered its Conditional Judgment and Order to Show Cause on an Agreement of Compromise and Settlement made by all the parties on both sides of the actions above mentioned—the present action and the FIF action in this Court together with the three actions pending in Delaware. The agreement provided (¶¶ 1–2) that counsel for the plaintiffs in the Delaware actions should be deemed to have appeared herein, and that the pending motion further to amend the complaint herein to add the accounting allegations should be allowed by consent (subject to its vacation in the event that the judgment of the Court approving the settlement should become ineffective). The Court accordingly allowed the amendment on the same day, December 26.

The first issue which faces this Court is whether Cherner is a class action which cannot be compromised without this Court's approval. Cherner has alleged that he represents

"All persons who have bought any shares of common stock of Transitron since December 8, 1959, either from any of the underwriters or dealers who participated in either

of the distributions covered by the two registration statements herein referred to or in the open market, \* \* \*." (Count 2)

and

" \* \* \* all persons to whom defendant [Merrill Lynch] has sold any shares of Transitron since December 8, 1959, by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of either of the prospectuses herein referred to (the said persons not knowing of the alleged untruths or omissions) \* \* \*" (Count 4)

Since the complaint was filed many persons have sought, and been granted, intervention on the theory that in each of the two classes alleged there are common questions of law and of fact affecting the several rights of numerous persons, and that, to some extent, common relief is sought. Thus, the Cherner case involves a class of plaintiffs including, at the least, all those who have voluntarily come in as interveners. Oppenheimer v. F. J. Young & Co., Inc., 2nd Cir., 144 F.2d 387, 390. See 3 Moore's Federal Practice § 23.11, p. 3465. Without at this point considering how much larger class may be involved, the presence of this small class makes it necessary for this Court to decide whether to approve the merits of the proposed compromise.

In considering the merits of the proposed compromise the Court has before it extensive briefs, transcripts of court hearings, and pre-trial discovery in both the Cherner and the FIF cases, as well as affidavits and other material presented in hearings on the show cause order.

This Court is mindful that the proposed settlement has the unanimous endorsement of all counsel and all parties who participated in any stage of the proceedings in this Court between the time the Cherner complaint was filed on November 8, 1961 and the time when this Court, on December 26, 1962 issued its order to show cause. Such unanimity has

particular significance because the lawyers who evolved the compromise have special experience in litigation of this type and rightly enjoy high reputations for technical competence, financial judgment, and ethical standards.

Moreover, plaintiffs' counsel, who, unlike defendants' counsel, are called upon to act for absent persons, have shown a full awareness that their obligation is to act in a fiduciary, non-partisan role toward all members of the classes of persons whom they represent. They did not advocate any compromise until they had engaged in an extensive discovery of the facts, and an elaborate analysis of all relevant legal considerations.

Furthermore, in bargaining power those who actively sought recovery were fully equal to those who resisted it. Among the active plaintiffs in the five related suits brought against Transitron were five investment trusts, each of which had a sufficiently large interest at stake, and each of which had sufficient funds of its own, to make a reliable appraisal of what would be a fair figure at which claims against Transitron should be settled.

Those who now are critical of some details of the settlement have had little first hand evidence on which to come to reliable conclusions as to the difficulty in proving the facts alleged in the complaint, or as to the possible defenses, or indeed any other phase of Transitron's alleged liability. A mere comparison of the text of the objections made orally and in writing with the text of the comprehensive and careful calculations in the memorandum filed in support of the compromise by Messrs. Green, Loss, St. Clair, and Cherner is illuminating. No one who reads that memorandum can doubt that it would be difficult to match the thoroughness, thoughtfulness, and disinterested judgment there revealed.

This Court does not deem it appropriate to comment on every aspect of the proposed settlement. To do so might give the erroneous impression that this Court itself had first hand knowledge of all the facts. And it would wrongly lead

some persons to assume that it had negotiated the settlement or laid down its outlines. The task of this Court is primarily to see (1) whether the amount proposed to be paid by defendants bears a reasonable relation to the amount which might be recovered, discounted by the difficulties of proof, by the available total and partial defenses, and by the uncertainties and delays of trial, (2) whether the formula for distributing any amount paid by defendants is fair, and (3) whether in the proposed agreement there are any inequitable provisions.

It is in this case extremely difficult even to guess what would be the maximum liability of defendants. And it is at least equally difficult not to be arbitrary in making discounts from that maximum. Taking the difficulties into account, this Court regards the method of approach adopted by plaintiffs' memorandum as sound as, and perhaps sounder than, any other approach. Moreover, most of the detailed analysis seems to this Court sound. But, to show that plaintiffs have not failed in their duty as representatives of possible claimants it may be useful to note certain specific points, especially such as tend to indicate that plaintiffs' counsel may have made a very favorable bargain.

1. With respect to what is called "The Patent Count", (Memo., pp. 5–6), this Court believes that Cherner is, if anything, too sanguine. So far as it has heard the evidence, this Court would not have made a finding that there was an affirmative misstatement in Transitron's statement that it "knows of no patent rights of other which might interfere with the conduct of its business." However, this Court agrees that the failure to refer to the Western Electric situation was a highly relevant omission. Whether the omission was "material" within the meaning of §§ 11(a) and 12(2) is certainly not clear. This Court shares the view expressed in the memorandum, at page 6, that there is no better than a "50–50 or 60–40 chance" that Cherner would prevail on this issue.

2. With respect to "The Accounting Allegations", from what this Court has heard it seems more than possible that at the close of all the evidence in a plenary trial plaintiffs might not prevail. Defendants relied upon Arthur Andersen & Co., accountants of high professional standing, and so far as now appears, defendants gave all the relevant facts to the accountants, and those accountants applied standard accounting practices which have not been criticised by the well known accounting firm of Peat, Marwick, Mitchell, & Co., who were retained by Cherner.

3. The memorandum's discussion of the "measure of damages" (pp. 8–10) reveals the scrupulous regard of the proponents of the compromise for every relevant legal consideration, for economic factors, and for nonpartisan protection of all interested parties. The final formula seems clearly fair in its general characteristics, even if in some aspects there are arbitrary elements. Arbitrary elements would exist in any formula for allocating damages among such a large body of diverse claimants. And if no formula were used, but each claimant had to establish every aspect of his individual status, there would be more money paid out to lawyers, but there surely would not be more money paid to many, if any, shareholders.

4. "The $300,000 payment to the Investment Companies", (Memo., pp. 15–16) raises what are, for this Court, the most troublesome problems. This Court rejects so much of the rationale advanced in the memorandum as relies upon the argument that "The Delaware plaintiffs were adamant in their refusal to join in this settlement without the additional payment" (p. 16).

It may very well be that if the $300,000 is not paid to them, some of the investment companies will not seek participation in any settlement in this Court. They may take the position that they are not bound by any decree of this Court and that they are free to continue their Delaware litigation. But any potential

claimant could make the same contention. Yet probably no one would say that a compromise was fair and deserved judicial approval if it provided one rate of dividend to those who agreeably acquiesced in the settlement and a higher rate to those who threatened to sue. In principle the proposed compromise at bar has the same vice. In their capacity as fiduciaries for all potential claimants, Cherner's counsel should not accept, and this Court cannot rightly approve, this principle of discrimination even if defendants say that they will not make any settlement without a specific assent to the settlement by the investment trusts, and even if such investment trusts will not give their assent unless they get preferred treatment.

5. But while this Court is not prepared to approve the present proposed arrangements with the investment trusts, it will approve a settlement under which defendants pay into court $5,300,000, and this Court makes allowances, up to a maximum of $300,000, to reimburse the investment trusts for their expenses of litigation and attorneys' fees. In short, this Court is prepared to make what, on evidence submitted in open court, it finds to be just compensation to the Delaware plaintiffs for "having conducted separate proceedings, having carried separate management [of litigation] burdens and having incurred separate expenses and obligations to counsel." (Memo., p. 15).

6. The proposed settlement contemplates the entry by this Court of a judgment which will bind with respect to "any claim embraced in the pleadings herein" persons who do not become parties.

Plaintiff and defendants think that such a provision will be valid. (Memo., p. 14). They base their conclusion upon Weeks v. Bareco Oil Co., 125 F.2d 84, 91 (7th Cir. 1941); Union Carbide & Carbon Corp. v. Nisley, 300 F.2d 561, 587–590 (10th Cir. 1962) semble; 2 Barron & Holtzoff, Federal Practice and Procedure (1961), § 572; see also Chafee, Some Problems of Equity (1950) 250–258; Kalven and Rosenfield, The Con-

temporary Function of the Class Suit, 8 U.Chi.L.Rev. 684 (1941); Note, Binding Effect of Class Actions, 67 Harv.L.Rev. 1059 (1954). But they recognize that there is very respectable authority to the contrary. Oppenheimer v. F. J. Young & Co., Inc., 144 F.2d 387, 390 (2d Cir. 1944); see also Zachman v. Erwin, 186 F.Supp. 681, 689 (S.D.Tex.1960); Newberg v. American Dryer Corp., 195 F. Supp. 345, 348 (E.D.Pa.1961); 3 Moore's Federal Practice, § 23.11, especially at 3465 et seq.

If Cherner and defendants have faith in such a bar order, their faith is not so clearly misplaced that this Court should decline to approve a settlement which incorporates the bar order. This Court is not prepared to rule that the views of the Seventh and Tenth Circuit Courts of Appeal are plainly wrong. Moreover, this Court sees force in the contention that "the binding force of a particular action cannot be determined accurately by the court which hears the class suit, for that court is ill-equipped to test the adequacy of the representation of absent class members, the sufficiency of notice given, or even the general fairness of the proceeding. Since these questions can best be answered realistically with respect to a particular person, the ultimate effect of the class action judgment will be determined when it is introduced in a subsequent action to bind persons not parties to the original action." See Note 67 Harv.L.Rev. 1059, 1060 (1954).

Furthermore, the bar order, unlike the proposed payment of $300,000, creates no possible discrimination. Anyone who wishes may stay out of the settlement of this case, and, on his own, sue defendants to establish their liability and his damage. In that proceeding he may contend that this Court was without jurisdiction to bar his claim. But a dissenter asks too much if he wants this Court to refuse to insert in its judgment a bar order for which there is strong judicial precedent and which defendants have explicitly stated is an indispensable condition of their paying any money at all. Inasmuch as the vast majority of share-

holders who have expressed their views want to share in a compromise at or near the 5 million dollar figure, it would be most unjust to deny them the opportunity to get any money because of objections of other stockholders whose fundamental contention is that they not only will not be, but indeed cannot be, adversely affected by anything that this Court does in this case.

In conclusion, this Court will approve the agreement of compromise and settlement as submitted if, but only if, it is modified along the lines set forth in paragraph 5 above. To refuse to grant approval would be to run a substantial risk that all the claimants will get nothing, and to go counter to the overwhelming weight of the expressed opinion of interested and informed parties.

### SUPPLEMENTAL MEMORANDUM

On January 28, 1963, while sitting at a trial, this Court received the attached letter* dated January 28, 1963.

It is a matter of complete indifference to the Court whether or not the parties to Cherner v. Transitron Electronic Corporation, et al., D.C., 201 F.Supp. 934 agree upon a settlement which conforms to this Court's opinion of January 24, 1963. Nor does this Court see any reason to reconsider or amend its opinion, or to hold a private conference designed to commit the Court in respect to any future action. But the Court deems it appropriate to place on the record certain matters which at various stages were drawn to the Court's attention in chambers and which ought to be available to any person interested in his litigation and, indeed, to the general public.

1. Defendant Transitron and the other defendants consistently have stated to Cherner's counsel and to this Court that they would not have entered into settlement negotiations unless among those expressly participating in the settlement were the four investment trusts which were plaintiffs in Delaware. Counsel for those investment trusts were involved not merely in settlement negotiations but in presenting to this Court in chambers the proposed settlement so that this Court could issue its orders to show cause. It was from that presentation that this Court drew its impression, stated in the opinion of January 24, 1963, that "in bargaining power those who actively sought recovery were fully equal to those who resisted it." ·

2. At no time in the presence of the Court did Cherner's counsel suggest that the amount of 5 million dollars approved by them as a fair settlement should be increased to $5,300,000. If defendants do ultimately pay into Court $5,300,000, the course of proceedings in and out of Court will make it evident that (1) the $5,000,000 would not have been paid into Court had it not been for the participation of Cherner's counsel, F.I.F.'s counsel, and the Delaware plaintiffs' counsel, and (2) the additional $300,000 would not have been paid into Court had it not been for (a) the initial demand of counsel for all the investment trusts that $300,000 extra be paid to the investment trusts and (b) the insistence of the Court that that $300,000 be added to the $5,000,000 paid into Court.

3. Beyond indicating in its opinion of January 28, 1963 that $300,000 would be the *maximum* amount payable to the investment trusts for their contribution to the settlement, this Court has never directly or indirectly, up to this time, given any indication what allowances it would make for expenses, attorneys' fees, or contributions. It would be a grave error to assume that the Court has acquiesced in any allowances to anyone or everyone "which will materially deplete the dividend eventually payable to" shareholders. And no one has authority from this Court for "negotiating a formula" which seeks to pre-empt or govern the judicial authority to make appropriate allowances.

Unless within a reasonable time there is filed in this Court a compromise settlement conforming to this Court's opinion,

* See Appendix.

 

of January 24, 1963, and to this memorandum, the case will proceed to trial.

### APPENDIX

MILTON POLLACK
111 Broadway
New York 6, N. Y.

January 28, 1963

Hon. Charles E. Wyzanski, Jr.
United States District Court
Federal Building
Boston, Massachusetts

Dear Judge Wyzanski:

I am taking the liberty of writing this letter to suggest that a conference be called for the purpose of attempting to solve problems which affect my clients and which have arisen out of the changes required by Your Honor's Opinion of January 24 to be made to the Agreement of Compromise and Settlement.

Essentially the problem faced by my clients is that the attitude of the *Cherner* plaintiffs, as expressed to me, makes it impossible for me to advise my clients where they stand. In brief, the *Cherner* plaintiffs say that the reimbursement to be made to the Delaware plaintiffs for their part in the cases and in the settlement should be limited to a proportion of their recovery out of the settlement fund, thus denying any recognition of the part which the Delaware funds played in creating the fund. At the same time the *Cherner* plaintiffs state their intention of asking for reimbursement to their counsel in an amount which will materially deplete the dividend eventually payable to my clients. Counsel for the parties have not succeeded in negotiating a formula sufficiently definite in effect for me to take to my clients for a surrender of their existing rights.

I wish to be able to recommend to my clients that they accept a settlement modified along the lines specified in Your Honor's Opinion so that the settlement can go forward. I hope that a discussion among all parties, with Your Honor's good offices as mediator, would break what appears to be an impasse. I stand ready to come to Boston as Your Honor's convenience may permit, although necessarily subject to Court engagements that I cannot avoid.

Respectfully yours,

s/Milton Pollack/seh

seh

cc: James D. St. Clair, Esquire