Sophie RUSKAY et al.,
Plaintiffs-Appellants,

v.

Chauncey L. WADDELL et al.,
Defendants-Appellees.

No. 213, Docket 76–7270.

United States Court of Appeals,
Second Circuit.

Argued Nov. 24, 1976.

Decided Feb. 17, 1977.

Abraham L. Pomerantz, New York City (Pomerantz Levy Haudek & Block, William E. Haudek, New York City, of counsel), for plaintiffs-appellants.

Albert D. Jordan, New York City (Cole & Deitz, Martin S. Berglas, Robert M. Kerrigan, New York City, of counsel), for defendants-appellees Merriman, Roach, Valicenti and Waddell & Reed, Inc.

Marvin Schwartz, New York City (Sullivan & Cromwell, Susan J. McCone, New York City, of counsel), for defendant-appellee Chauncey L. Waddell.

Kelley Drye & Warren, New York City, on the brief, for defendant-appellee United Funds, Inc.

Before MANSFIELD, VAN GRAAFEILAND and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

This case arises out of the sale of the stock of an investment advisory company, a class of transaction that has spawned more than its share of unusually complex litigation. The instant appeal, the latest chapter in a series of class and stockholder actions concerning a large mutual fund, is no exception.

The mutual fund in question is United Funds, Inc. ("United"). Prior to 1969, the investment advisor of United was Waddell & Reed, Inc. ("W&R"). In that year, W&R sold 97 percent of its outstanding shares to Continental Investment Corporation ("CIC"). CIC then merged W&R into one of its wholly-owned subsidiaries, CWR Corporation, whose name was changed to Waddell & Reed ("New W&R").

The investment advisory contract was terminated by operation of law when the sale was made. 15 U.S.C. § 80a–15(a)(4). The sale was thus made conditional upon the reinstatement, by United's shareholders, of the contract with New W&R. In June, 1969, this approval was duly given.

Prior to this reorganization, two shareholder actions (the "Horenstein-Ruskay actions") were begun in federal court, one brought by Mrs. Ruskay, who is the plaintiff in the instant action as well.[1] In substance, these actions alleged that W&R had illegally diverted the brokerage business of United to a wholly-owned subsidiary of W&R, Kansas City Securities Corporation ("KCSC"). They also alleged that United's account had been "churned" and that W&R had appropriated "give-ups"[2] which properly belonged to United. The return of all these profits, allegedly amounting to several million dollars, was demanded. While this action was pending, the sale to CIC was announced. With that development, the theory of the action was changed by amending the complaint to allege that the price paid by CIC for W&R stock represented, in part, the profits realized from breaches of fiduciary obligations set forth in the original complaints. The actions now sought recovery from W&R on a theory of constructive trust. In December, 1969, both

---

1. In addition to the two actions involved in the instant appeal, Mrs. Ruskay has brought a derivative suit concerning United in New York Supreme Court, *Ruskay v. Reed*, Index No. 8283/64.

2. "Churning" occurs when an account is actively traded solely to generate commissions. The "give-ups" in this case arose when W&R ordered that the broker-dealers executing trades for United "give up" part of their commissions to other broker-dealers, who had not actually executed the trades in question, but had performed useful services for W&R and United. For an excellent discussion by Judge Friendly of the problems posed by give-ups, *see Arthur Lipper Corp. v. SEC*, 547 F.2d 171, 174–176 (2d Cir. 1976).

of these actions were settled for $650,000. A release was executed in October, 1970.

The law governing the sale of an investment advisor's stock at that time was expressed in *Rosenfeld v. Black*, 319 F.Supp. 891 (S.D.N.Y.1970). In that case, it was held that the sale of such stock for whatever the market would pay, absent any specific wrongdoing by the advisor, was entirely proper, and did not render the selling stockholder accountable to the fund. *See also SEC v. Insurance Securities*, 254 F.2d 642 (9th Cir.), *cert. denied*, 358 U.S. 823, 79 S.Ct. 38, 3 L.Ed.2d 64 (1958).

The following year, the decision of the district court was reversed, *Rosenfeld v. Black*, 445 F.2d 1337 (2d Cir. 1971) (Friendly, *J.*), *cert. dismissed under Rule 60*, 409 U.S. 802, 93 S.Ct. 24, 34 L.Ed.2d 62 (1972). Shortly thereafter, Mrs. Ruskay brought a second derivative action. This time, the complaint alleged, in keeping with *Rosenfeld*, that the excess of the price paid for W&R over its net asset value, approximately $62,000,000, represented a sale of W&R's fiduciary position. The defendants moved for summary judgment on the grounds that the settlement of the prior actions barred these suits on grounds of *res judicata* and release. The district court, Metzner, *J.*, granted the motion, 342 F.Supp. 264 (S.D.N.Y.1972), and this appeal followed. We affirm.

As part of the settlement of the 1969 actions approved by Judge Lasker pursuant to the requirements of Rule 23.1,[3] a release was executed in favor of W&R and the individual defendants. In relevant part, it read:

United Funds, Inc., a Delaware corporation having its principal office and place of business at 20 West 9th Street, Kansas City, Missouri, for good and sufficient consideration, the receipt and adequacy of which is hereby acknowledged, does hereby release and forever discharge Waddell & Reed, Inc., a New York corporation having its principal office and place of business at 20 West 9th Street, Kansas City, Missouri, and Kansas City Securities Corporation, a Missouri corporation having its principal office and place of business at 20 West 9th Street, Kansas City, Missouri, their respective directors, officers, agents and employees and all individual defendants in the above entitled actions, including Chauncey L. Waddell, Cornelius Roach, Joe Jack Merriman and Robert W. Wagner and their respective heirs, executors, administrators and assigns of and from *any and all claims, demands or causes of action arising at any time from the beginning of the world to the date of these presents the undersigned, its successors or assigns, had, now has or may hereafter have against the aforementioned released parties, or any one or more of them, for or by reason of any of the matters or transactions recited or described in the complaints, supplemental complaints and/or other pleadings* filed by the plaintiffs in the above entitled actions saving and reserving, however, the obligations of the defendants as set forth in the Stipulation of Settlement in these actions. (emphasis added)

Appellants vigorously urge that, despite the clear language of this release, it is operative only as to the specific claims they were pressing at the time of settlement. This contention is devoid of merit.[4]

---

**3.** Rule 23.1, which governs derivative actions, provides:

The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs. This provision gives the other shareholders precisely the protection that the dissent would grant by allowing this case to proceed. The district judge, before approving a settlement, must carefully consider the interests of the absent shareholders. Upon this record, it is abundantly clear that Judge Lasker carried out this obligation fully, and concluded that a general release was appropriate under the circumstances.

**4.** We are not referred to any case, nor has our research disclosed one, in which a general release like this has been given such a construction.

Contrary to the suggestion of the dissent, it is not uncommon for general releases to be grant-

In executing this release and paying out a substantial amount of money, the appellees sought more than relief from the particular allegations involving KCSC which were the focus of the lawsuit. The affairs of W&R and CIC had already given rise to a flood of litigation in the Southern District and the state courts of Delaware and New York. It was certainly reasonable and businesslike to seek finally to settle any allegations of wrongdoing arising out of the sale of W&R, in order that there would no longer be a cloud over the transaction. As the district court found, this was the precise intent of the. settling parties. 342 F.Supp. at 271. This is the clear import of the language "any and all claims, demands or causes of action . . . for or by reason of any of the matters or transactions recited or described in the complaints, supplemental complaints, and/or other pleadings . . . ." Appellants have not advanced any reason for a narrow construction of this broad language.[5]

Advised by highly competent counsel, the plaintiffs made an informed decision to grant repose to the defendants in return for a substantial sum.[6] In hindsight, the bargain appears to have been a bad one for the plaintiffs. Had they known then what they know now, it is likely that more money would have been demanded before a compromise was reached. However, the understandable desire of the plaintiffs for a larger recovery in no way limits the scope of the release they gave in an arms-length transaction. As Judge Pollack has recently stated, in determining the scope of a release similar to this one:

> Plaintiffs' claims herein, arising as they do out of a controversy pre-dating the execution of the release, might have been adjudicated at the time of its execution. Instead, plaintiff made an intelligent and knowledgeable choice to forego litigation in favor of compromise. His execution of a valid release bars his claims herein.

*Mittendorf v. J. R. Williston & Beane,* 372 F.Supp. 821, 836 (S.D.N.Y.1974).

■ In construing the scope of this release, we are to give effect to the intent of the parties. *Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321, 342–48, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Any fair reading of that intent, as demonstrated by the language of the release itself and the circum-

---

ed in settlements of derivative suits. *See, e.g., Rosenfeld v. Black,* 336 F.Supp. 84, 87 (S.D.N.Y.1972). Moreover, the decision relied upon by the dissent, *Heddendorf v. Goldfine,* 167 F.Supp. 915, 928 (D.Mass.1958), specifically endorses the grant of a general release under circumstances strikingly similar to those in this case.

In any event, the propriety of the grant of a general release is not before us. The time to make that objection was in the settlement hearings conducted by Judge Lasker. We are unwilling to allow one who has obtained the benefit of a settlement to object, in a subsequent proceeding, that the documents he helped draft were unfair to him.

5. Although the dissent suggests otherwise, in this case the release was referred to throughout as a "general" release. Judgment and Order of Lasker, J., 67 Civ. 4175, 69 Civ. 276, June 25, 1970. Judge Lasker went on to explain that the settlement was in full satisfaction of any claim which might arise in the future out of the "matters and transactions" recited in the pleadings. An identical broad reading of the release is given in the Notice of Settlement Hearing, which stated:

The Stipulation of Settlement to be submitted for approval to the Court was arrived at to accomplish results deemed by both plaintiffs and defendants to be in the best interests of United and, from the viewpoint of the defendants, *to avoid further expense, inconvenience and the distraction of burdensome and protracted litigation, as well as to put at rest all contentions or controversies asserted or which might have been asserted on the basis of the matters and transactions described or referred to in the various pleadings of the plaintiffs.*

*Id.* at 3 (emphasis added). At no time during the settlement negotiations did plaintiffs' counsel attempt to narrow this broad language or preserve any future claim.

6. In light of the recovery now sought, we realize that $650,000 might seem an insignificant sum. However, Judge Lasker stated that it was the largest settlement, up to that time, ever received by a mutual fund in a derivative suit. In any event, the risk that a party may forfeit a huge judgment by premature settlement is simply one of the hazards of litigation, just as is the possibility that one may pay a great deal to settle a claim which turns out to be entirely unfounded.

stances surrounding its execution, supports the conclusion that the plain meaning of the release bars the instant action.

■ There can be no question that the sale of W&R to CIC was one of the transactions recited in the pleadings, and that the current claim arises out of it. *See First Nat. Bank of Cincinnati v. Pepper*, 547 F.2d 708, 716 (2d Cir. 1976) (Friendly, *J.*); *Panichella v. Pa. R. R.*, 268 F.2d 72, 74–75 (3d Cir. 1959), *cert. denied*, 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 353 (1960). It would have been a simple matter to except the claim now asserted from the blanket language of release.[7] *Cf. United States v. Allegheny-Ludlum Industries*, 517 F.2d 826, 852 (5th Cir.), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). The absence of any such reservation leads us to the conclusion that none was intended. The case is similar to *Dura Elec. Lamp Co. v. Westinghouse Elec. Corp.*, 249 F.2d 5 (3d Cir. 1957), which concerned the scope of a similar release. In that case, Judge Goodrich stated:

It is to be noted that the language of the release is as general as language can be. There is nothing by which it may be interpreted as a covenant not to sue. There is nothing which even hints at a reservation of rights. There is nothing in the facts here which looks to a reexamination of the release based upon fraud or mutual mistake or anything of the sort. The transaction was one conducted between lawyers so we do not have an instance where a court may strive to extricate an uninformed layman from the consequences of a hasty settlement.

.    .    .    .    .

There is an affidavit by the president of the plaintiff company which figures in the district court proceedings. This affidavit does not claim that the company was lured into making this settlement. It simply says that it was not the intention of the president to release all claims against other conspirators. We think this affidavit does not change the application of the rule. When a man uses words which have a given legal effect he is bound by that effect in the absence of fraud or mistake none of which there is here.

*Id.* at 7 (citations omitted). *See Stella v. Kaiser*, 218 F.2d 64 (2d Cir. 1954) (Clark, *Ch.J.*), *aff'd on reh.*, 221 F.2d 115 (2d Cir.), *cert. denied*, 350 U.S. 835, 76 S.Ct. 71, 100 L.Ed. 745 (1955); 4 Williston on Contracts §§ 601, 603 (3d ed. 1961); *cf. Gordon v. Vincent Youmans*, 358 F.2d 261, 263 (2d Cir. 1965). Nor is it a valid ground for objection that plaintiffs were ignorant of the theory of recovery now advanced, inasmuch as all the litigants appear to have been aware of it.[8] The memorandum of W&R in support of the settlement explicitly discussed the possibility of recovery on this theory and found it wanting. This memorandum was available to all parties, as well as Judge Lasker, who explicitly approved the settlement as fair.[9] Moreover, at the same time, plaintiffs' counsel was engaged in vigorously contesting the decision of the district court in *Rosenfeld v. Black, supra*, in which he ultimately succeeded. *See* R. Jennings & H. Marsh, Securities Regulation, 1559 (3d ed. 1972). He could have urged the same legal point in this action, or made mention of the possibility of such a future claim during the settlement proceedings. To now allow plaintiffs to prosecute this action after giving what is, on its face, a general release would allow the defendants to be "sandbagged," a result we are not willing to countenance.[10]

---

7. In this connection, we note that plaintiff, represented by the same counsel, has executed a release in this action excepting certain claims.

8. The dissent suggests that Judge Tyler would not have allowed the plaintiffs to press a *Rosenfeld* claim. We can see no reason to grant relief as a result of such speculation.

9. This memorandum also discussed the desire of W&R and the individual defendants to lay to rest any legal question involving the sale to CIC.

10. Even were plaintiffs' counsel unaware of the possibilities of recovery on a *Rosenfeld* theory, a general release would still be binding as to

Finally, it is not at all clear that this claim was not *actually* pleaded in the complaints in the Horenstein-Ruskay actions.[11] Fed.R.Civ.P. 8 abandoned the requirement that a cause of action be pleaded; instead, the complaint is to set forth "a short and plain statement" showing that the plaintiff is entitled to relief. Every element of a claim under *Rosenfeld v. Black* is set forth in the Horenstein-Ruskay complaints.[12] The fact that plaintiffs' counsel decided not to press these claims is merely a tactical

this cause of action. *First Nat. Bank of Cincinnati v. Pepper*, 547 F.2d 708, 716 (2d Cir. 1976). A change in controlling law, even one grounded in the Constitution, is not a basis for reopening a judgment. *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940).

The dissent suggests that a general release exceeded the authority of the party granting it. Whatever is the law as to a release of wholly unrelated claims in a derivative action, it is clear that related claims, as here, may be released under the supervision of the district court.

11. We do not intend to rest our decision on this ground, as the dissent apparently assumes. Our holding is that the clear language of the release bars the instant claim. The wide scope of the pleadings is merely one of the surrounding circumstances of the earlier action supporting that conclusion.

12. Thus, the supplemental complaint in *Horenstein v. Waddell & Reed* stated:

65. The sale to Continental of the approximately 51% of WRI's voting stock owned or controlled by Defendants Waddell and Merriman would be sufficient to transfer absolute control of WRI to Continental, thereby putting WRI and its wholly-owned subsidiary Defendant KCSC within the ownership and control of Continental.

66. Continental was formed in May 1968 and is located principally in Boston, Massachusetts, and its primary business is insuring mortgage lenders against loss on their residential mortgage loans.

67. With an eye toward their own personal profit and aggrandizement, and in total disregard of their fiduciary and legal obligations to United and United's shareholders, the Defendants Waddell and Merriman have agreed to and are preparing to sell their controlling stock to Continental, and the Defendants United, KCSC, and Roach have acted and continue to act in concert with Waddell and Merriman to facilitate such sale and to facilitate Continental's tender offer for the remaining outstanding shares of WRI.

Similar charges were made in the amended complaint in that action, as follows:

46. The transactions herein alleged were caused by WRI, the individual defendants and the other directors of United pursuant to a plan among them to benefit WRI and its officers, directors and stockholders, at the expense of United and its shareholders.

47. The acts of WRI and the individual Defendants, and the diversion to themselves of opportunities belonging to United, hereinbefore alleged, were and are unlawful and in violation of the Investment Advisors Act, the Investment Companies Act, the Securities Exchanges [sic] Act, the common law, and the Investment Advisory Agreements between WRI and United.

48. The acts herein alleged have been and are a gross abuse of trust, enacted in bad faith, and carried out with gross negligence and disregard by the defendants of the fiduciary duties which are imposed upon them by the law.

49. WRI and the directors, officers and stockholders of WRI, did, at all times herein mentioned, and now do, dominate and control the directors and officers of United and the policies and the conduct of the affairs of United.

50. The officers and directors of United have been at all times herein mentioned, and still are, subservient to the directions and wishes of WRI, and its directors, officers and stockholders, without regard to the best interests of United.

51. The payment of excessive brokerage commissions to KCSC and other brokers, and the diversion of portions thereof as hereinbefore alleged, and the other results of the aforesaid practices, have amounted to and continue to amount to a waste and spoliation of United's assets.

52. The foregoing acts have caused substantial harm and injury to United.

53. The individual defendants have been guilty of other acts of mismanagement, malfeasance and non-feasance in their capacities as officers and/or directors of United and/or WRI, which acts constitute gross negligence, waste of corporate assets and opportunities, and fraudulent disregard of the duties and responsibilities owed by them to United.

54. Such acts of mismanagement, malfeasance, and non-feasance are also attributable to defendants WRI and KCSC.

Were the shoe on the other foot, we have no doubt that counsel would vigorously contend that these pleadings are sufficient under Rule 8 to support a *Rosenfeld* cause of action. Having made these sweeping charges of breach of fiduciary duty in verified pleadings, plaintiff will not now be heard to say that she did not really intend the broad allegations of the complaint.

decision of the sort that is made in any litigation. Of course, if this new cause of action was actually pleaded, all parties agree that the release bars this new lawsuit.

In an era of ever-increasing caseloads, the settlement of complex lawsuits is a welcome development. Without it, judicial administration would prove an impossible task. Thus, strong policy considerations require that what all parties thought to be a closed matter remain so. One who gives a general release has had his opportunity to press his claim; before waiving his rights, he should carefully consider the possibility of a development such as the one that gave birth to this lawsuit. That risk was implicit in the settlement, and we see no reason to relieve the appellant from the consequences of his choice. Once the decision to settle is made, a party must abide by it.

In view of our disposition of this case on the ground of release, it is unnecessary to reach appellees' other contention that the claim is barred by res judicata. *Stella v. Kaiser, supra,* 221 F.2d at 116 (L. Hand, *J.*). The judgment of the district court is affirmed.

MANSFIELD, Circuit Judge (dissenting):

I must dissent for the reason that in my view the record is clear that in settling and releasing the earlier Horenstein-Ruskay stockholders' derivative claims based on alleged improper brokerage activities the parties to those actions did not settle or release claims that were first asserted years later to the effect that defendants sold their investment advisory office in violation of principles outlined in *Rosenfeld v. Black,* 445 F.2d 1337 (2d Cir. 1971).

The two claims are entirely separate and distinct from each other. Indeed the facts giving rise to the sale-of-office claim did not occur until some two years after the brokerage accounting action had been instituted. The sale-of-office claim could not, therefore, have been asserted in the settled action without court permission, see F.R. C.P. 15(d), which was never sought or obtained for such a claim. Nor did the

parties to the earlier suits, in settling the brokerage claims, indicate that sale-of-office claims were contemplated, much less settled, probably for the reason that the principles of *Rosenfeld v. Black* were yet to be finally established. Indeed, in seeking court approval of the settlement and release of claims for an accounting for illegal brokerage profits estimated at a few million dollars, they did not advise the court, United's stockholders, or anyone else, that they were also settling a sale-of-office claim amounting to some $62,000,000. Had they done so, it is clear that, in view of the possibility that the defendants' sale of advisory office would violate basic principles being advanced in *Rosenfeld,* neither the district court nor United's stockholders would have authorized settlement of a claim that might be worth $62,000,000 for a mere $535,000 to $650,000. Indeed, in approving the settlement, Judge Lasker noted that when considered against the plaintiffs' claim of $2,064,000 damages the proposed settlement figure appeared to be a "respectable" one.

In short, the court, parties and United stockholders, thought they were settling brokerage claims, not a sale-of-office claim, which was never mentioned. In my view the expansive interpretation (to me a misinterpretation) given by the majority to the earlier settlement and court approval not only ignores the limited powers and purpose of the parties but it strips United and its stockholders of a valuable claim and confers an unjustifiable windfall upon the defendants.

The original Horenstein-Ruskay actions, commenced in 1967 on behalf of the investment fund United against W&R, which was investment advisor to United, and W&R's directors, claimed that the defendants channeled United's portfolio securities transactions to a W&R subsidiary, Kansas City Securities Corporation (KCSC), as the stockbroker for United and that in the handling of these United transactions on a brokerage basis the defendants engaged in various improper practices (e.g., "churning," self-dealing, improper diversion of customer-di-

rected "give-ups," etc.) which yielded illegal profits to W&R and to its subsidiary, KCSC. The Horenstein plaintiffs sought injunctive relief, impressment of a trust, and an accounting for the profits thus alleged to have been illegally diverted by the defendants.

Following the 1969 agreement by the defendants to sell control of W&R, which had a net asset value of $18,000,000 or $18 per share, to Continental Investment Corporation (CIC) for $80,000,000, the Horenstein plaintiffs, fearing that the individual defendants would thereby escape with the alleged ill-gotten gains realized as a result of their brokerage activities in the handling of the United account, sought leave in May, 1969, to amend their complaint by adding two new causes of action. One of the proposed new counts (the Second) claimed that the sale would deprive KCSC of its seat on the Pacific Stock Exchange, as a result of which United would incur a substantial loss, since under the investment advisory contract certain portions of KCSC's fees were remitted to United. The other proposed new count (the Third) alleged that at least part of the premium paid for the W&R shares above the net asset value of $18 per share was attributable to the illegal profits realized by W&R as a result of its improper brokerage practices in the management of the United investment fund. In short, the Horenstein plaintiffs claimed that, since the premium represented a capitalization of the illegal brokerage profits, the sale should be enjoined or the proceeds be impounded in trust for United pending the outcome of the derivative suits. At no time did the Horenstein plaintiffs claim that the defendants had violated their fiduciary duty by selling their investment advisory position; their claims were directed solely against brokerage abuses and they sought relief limited to preventing the defendants from retaining the profits (realized directly or through capitalization and sale) attributable to those abuses.

The distinct and discrete nature of the Horenstein claims was recognized by Judge Harold R. Tyler, who granted the plaintiffs'

motion for leave to add the claim requesting a tracing of the allegedly ill-gotten profits, which he viewed as "substantially a request for an alternative basis for relief on the claims already stated in the complaint." *Horenstein v. Waddell & Reed, Inc.,* 13 Fed. R.Serv.2d 330, 333 (S.D.N.Y.1969). The only difference the addition of this request would make, he stated, "will be on legal argument and, perhaps, an additional motion for a preliminary injunction against the tender offer and sale." *Id.*

As to that part of Horenstein's proposed supplementation that alleged direct losses to United from the sale, however, Judge Tyler denied the motion. The proposed count, he stated, had nothing to do with the churning, self-dealing, diversion of give-ups and other brokerage activities alleged in the original complaint; it arose merely out of the sale of W&R stock and the investment advisory contract between W&R and United. He held, therefore, that the court lacked the power to entertain the suit under the doctrine of pendent jurisdiction and that, even if the court did have the power, "I find that the interests of judicial economy and fairness to litigants would not be served by adding this claim to either the Horenstein action or the consolidated actions." *Id.* at 336. Thus Judge Tyler was unwilling to allow the Horenstein plaintiffs to add a claim that was not based on the alleged brokerage improprieties.

On June 4, 1969, Horenstein amended his complaint to request the tracing of profits, and plaintiff Ruskay followed suit in early July. On July 2, however, the tender offer was consummated. No trust was imposed on the proceeds. In December 1969 both suits were settled.

In the latter part of 1971, following our decision in *Rosenfeld v. Black,* 445 F.2d 1337 (2d Cir. 1971), *cert. dismissed,* 409 U.S. 802, 93 S.Ct. 24, 34 L.Ed.2d 64 (1972), Ruskay and three stockholders who had not been involved in the Horenstein-Ruskay actions brought the present suits, alleging that the sale of the W&R stock constituted a sale of fiduciary office in violation of the principles established in *Rosenfeld v. Black,*

*supra.* Their claim is based not merely on the defendants' transfer of ownership of W&R to CIC at a premium but on the parties' agreement that the sale at such a premium would not become effective unless the selling defendants succeeded in obtaining for the purchaser the reinstatement of the United investment fund's advisory agreements, which would require the approval of United's directors. The defendants were alleged to have violated their fiduciary duty by accepting the premium in exchange for successfully influencing the selection of W&R's successor. Plaintiffs here appeal from the district court's order granting partial summary judgment and dismissing this claim on the grounds of res judicata.

## DISCUSSION

A stockholder-plaintiff in a derivative suit represents his company and its stockholders in a limited capacity only. He generally may settle only those disputes which are or could have been asserted by him with respect to the transactions alleged in his complaint on the company's behalf. He may not use his claims or lawsuit as the basis for releasing the defendants generally or as a means of releasing claims which could not have been advanced by him.[1]

The essential question before us, therefore, is whether the sale-of-office claim was or could have been asserted in the Horenstein-Ruskay suit. The record answers this question in the negative. The claim was never asserted in the settled lawsuit. Nor could it have been asserted, since the facts giving rise to it did not occur until long after that suit was begun, and Judge Tyler's ruling makes it clear that permission would not have been granted to add it.

The majority seek to remedy this glaring deficiency by taking the position that since the sale of W&R stock was described in the supplemental Horenstein-Ruskay complaint and the sale-of-fiduciary office claim arises out of that sale, the present plaintiffs are precluded from asserting the sale-of-office claim. The majority's analysis, however, proves too much. The claim Horenstein unsuccessfully attempted to add in the original actions—that the sale would deprive a W&R subsidiary of its exchange seat and would thereby injure United—also arose out of the sale. Thus, under the majority's analysis, that claim would similarly be barred, even though it clearly did not form and could not have formed any part of the subject matter of the Horenstein-Ruskay actions. The sale-of-office claim asserted here stands in the same position as the loss-of-exchange-seat claim which Judge Tyler refused to add to the Horenstein-Ruskay complaint. Both claims are completely unrelated to the breaches of fiduciary duty alleged in the original complaint. Both are related to the Horenstein-Ruskay action only to the extent that the sale was mentioned in the amended complaint in that action as the basis for tracing the illegal brokerage profits and the claims for loss-of-exchange seat and for sale-of-fiduciary-office also arose out of that sale. Neither could have been alleged at the time the lawsuit was filed. Both involved little additional factual proof but many additional legal problems.

Thus it is readily apparent that Judge Tyler would have denied a motion to add a *Rosenfeld* claim to the original complaint and, under such circumstances, we have held that it must be assumed that he would have refused to add the claim. *Burns Bros. v. Central Railroad of New Jersey,* 202 F.2d 910 (2d Cir. 1953). In essence, what the majority has done is to hold that the representatives in the original actions settled

---

1. If claims beyond the bounds of the complaint are to be settled, the ordinary course of action is to seek amendment of the complaint to include those claims as part of the settlement. See, e.g., *Masterson v. Pergament,* 203 F.2d 315 (6th Cir.), *cert. denied,* 346 U.S. 832, 74 S.Ct. 33, 98 L.Ed. 355 (1953); *Cherner v. Transitron Electronic Corp.,* 221 F.Supp. 48, 50 (D.Mass. 1963); *Heddendorf v. Goldfine,* 167 F.Supp. 915, 921, 928 (D.Mass.1958). Such a procedure is appropriate only where the new claims have been adequately and explicitly considered by the parties and the court. *Winkelman v. General Motors Corp.,* 48 F.Supp. 490, 495–96, *modified,* 48 F.Supp. 500 (S.D.N.Y.1942).

disputes as to which they had no authority to act as representatives. In this I cannot concur.

Nor does the majority's reliance on the release executed between United and the Horenstein-Ruskay defendants, rather than on other elements of the settlement, change this analysis. The release was effective only to the extent that the Horenstein plaintiffs acted within the limits of their representation, as part of the settlement of their suits. A company cannot, as a general matter, bar derivative actions on its behalf by release.

Even if the Horenstein plaintiffs might have been permitted to assert a *Rosenfeld*-type claim, the language of the settlement documents should not be construed to bar such a claim. The release was not, as the majority contends, a general release—indeed, such a release would not ordinarily have been approved.[2] It released the defendants only from "all claims, demands or causes of action arising . . . for or by reason of any of the matters or transactions recited or described in the complaints, supplemental complaints and/or other pleadings." Although Judge Lasker referred to the release as a "general" one in his order, it is clear from the context that he meant only that it released the defendants generally from any claims arising out of the churning and self-dealing transactions forming the basis of the claims. The transactions which were the focus of the Horenstein-Ruskay actions were churning and self-dealing transactions allegedly undertaken by W&R prior to the institution of the lawsuits in 1967. The sale of W&R stock was relevant to the suits only because plaintiffs demanded that the proceeds of those churning and self-dealing transactions be traced through to the selling stockholders. No allegation was made that the defendants had breached their fiduciary duties by selling their advisory positions on condition that they would influence United to validate the purchaser (CIC) as adviser. Judge Tyler, in granting in part Horenstein's motion to supplement his complaint, viewed the tracing request simply as a remedy designed to recover the illegal brokerage profits. Although defendants' attorneys, in a passing reference, derided the possibility of a *Rosenfeld* claim in their briefs, Judge Lasker made no mention of any such claim, much less of its merit, in his order approving the settlement, even though he painstakingly and exhaustively discussed the chances of plaintiffs' success on all of the grounds alleged in their original complaints. The reason is clear: the district court did not intend to authorize settlement of such a claim. Nor did the stockholders, who were given absolutely no notice of it in the settlement notice sent to them as mandated by F.R.C.P. 23.1.

While I agree with the majority that "the settlement of complex lawsuits is a welcome development," it should not be expanded beyond the parties' intent, particularly in representative or derivative suits where the effect is to injure innocent stockholders. Because a representative shareholder acts within a limited grant of authority when settling a dispute on behalf of all stockholders and because of the dangers inherent in representative settlements, I

---

2. As the court stated in *Heddendorf v. Goldfine*, 167 F.Supp. 915, 928 (D.Mass.1958), when it explicitly considered and approved a general release under the circumstances of the case:

"While, in general, this Court has some doubt whether it is desirable for a tribunal to release defendants from liability not only for specific items of disclosed wrongdoing but also for any undisclosed wrongdoing during a defined period, the Court has no scruples in approving in this case such a general release. Here we have had the benefit of the most intensive investigation by one of the country's foremost specialists in this type of litigation. We have had an abundance of depositions. There has been a thorough canvas [sic] by a committee of Congress. This Court itself has conducted a number of hearings and has even gone so far as to open up a suggested line of evidence. On the special facts of this case, a general release is appropriate. But the special facts may not be paralleled in other litigation. And so this case may not serve as a broad precedent." Where, as here, there is no indication that the district court which approved the settlement even considered the possibility of a general release, it is wholly inappropriate for this court to infer one.

would construe such settlement agreements narrowly, limiting their effect to the dispute clearly before the court at the time of settlement. We have stretched the effect of representative and derivative actions far enough by allowing nonparties to be precluded merely by receipt of a notice of settlement. It is asking too much to require, as the majority apparently would here, that each stockholder consult a lawyer as to possible subtleties of language and law not set forth on the plain face of the notice and its related documents.

For these reasons I would reverse the order of the district court.