**IOTA INDUSTRIES, INC. (formerly known as Commonwealth United Corporation), a Delaware Corporation, et al., Plaintiffs,**

v.

**George A. FRIEDLANDER et al., Defendants.**

**No. 76 Civ. 1122(MP).**

United States District Court, S. D. New York.

April 21, 1977.

Burns, Van Kirk, Greene & Kafer, New York City, for plaintiffs, by William D. Greene, Paul N. Sternbach and John T. Hug, Jr., New York City, of counsel.

Burgoyne, Michels, Rose & Williamson, New York City, for defendants George A. Friedlander, Robert B. Friedlander, Roger K. Soderberg, Exeter Equities, and T. H. E. Investment Corp., by Donald J. Williamson and Graham S. Rose, New York City, of counsel.

Herman E. Cooper and Maria T. Jones, New York City, for defendant Sidney H. Kibrick.

Natanson, Reich & Barrison, New York City, for defendants Louis J. Nicastro and Charles Koppleman, by Harold L. Kestenbaum, New York City, of counsel.

## OPINION AND DECISION

POLLACK, District Judge.

This suit is posited on alleged violations of the federal securities laws which are claimed to have tainted a purchase and sale agreement of March 11, 1970 that conveyed the assets of the real estate division of plaintiff Iota Industries, Inc.'s predecessor ("Commonwealth") to defendant Exeter Equities for allegedly inadequate consideration. Rescission, a constructive trust, damages and legal fees are sought by plaintiffs.

The affirmative defense of a prior release was asserted by defendants George A. Friedlander, Robert B. Friedlander, Roger K. Soderberg, Exeter Equities, T.H.E. Investment Corp., and Sidney Kibrick. Every one of those defendants received the release relied on herein as a bar to this suit. On consent of all parties the separate issue of release was heard at a bench trial pursuant to Fed.R.Civ.P. 42.

Plaintiffs have voluntarily discontinued this suit heretofore as against all defendants except the Friedlanders, Soderberg, Exeter Equities, and T.H.E. Investment Corp. ("defendants" or "Exeter defendants" hereafter). For the reasons appearing in this opinion, the present suit is barred as against all these remaining defendants by the asserted release; accordingly, judgment is to be entered in favor of defendants and dismissing the complaint.

The trial consisted primarily of jointly stipulated findings of fact and production of documentary evidence. Plaintiffs

presented no witnesses. Defendants presented the testimony of the attorney who represented Commonwealth in the *Land* and *Crawford* litigations mentioned hereafter and of defendant Soderberg.

The release upon which defendants rely was given to them by Commonwealth on December 22, 1972 and releases them "from all claims which Releasor asserted or could have asserted against Releasee in the actions settled [by two Stipulations of Settlement, dated May 26, and September 29, 1972]." The Stipulations of Settlement disposed of groups of related cases referred to below, including *Land v. Commonwealth United Corp.,* 69 Civ. 3726 (S.D.N.Y.), *Crawford v. Commonwealth United Corp.,* 71 Civ. 637 (S.D.N.Y.) and *Albert Fried & Co. v. Seeburg Corp.,* 69 Civ. 5736 (S.D.N.Y.). The May 26 Stipulation provided in relevant part that, upon court approval, "each Party [to the Stipulation] shall be released of all claims against him by any other Party which are asserted or could be asserted in the *Land* complaint."

In 1969, stockholders of Commonwealth United Corporation (the predecessor to Iota Industries, Inc., the plaintiff herein) brought twelve actions variously asserting claims as representatives of a class composed of all stockholders and derivative claims on behalf of the corporation itself. These actions are referred to as the Commonwealth Cases and included a suit by one, Sherelee Land, as plaintiff. Nine of the twelve actions were instituted in the Southern District of New York, two in the Central District of California and one in the Northern District of Alabama.

At the same time or shortly thereafter, stockholders of Seeburg Corporation brought like class and derivative suits on behalf of all Seeburg stockholders and on behalf of the corporation itself. These actions were instituted in the Northern District of Illinois, the Southern District of New York and the District of Delaware. This group included a suit by Albert Fried & Co. as plaintiff.

On February 2, 1970 the parties in most of these actions were ordered to show cause before the Judicial Panel on Multidistrict Litigation why these actions should not be transferred for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407.

Finding that these two groups of cases shared substantial common questions of fact and that Commonwealth was the principal defendant in all actions and that there was substantial commonality of claims, issues and defendants, the Multidistrict Panel ordered the transfer of all of the cases to the Southern District of New York for consolidated or coordinated pretrial proceedings, assigning the Honorable Frank H. McFadden of the Northern District of Alabama to handle such proceedings.

On September 1, 1970 a further action, entitled *Jack B. Crawford v. Commonwealth United Corp.,* brought originally in state court and removed to the United States District Court for the Central District of California, was conditionally transferred by the Multidistrict Panel to the Southern District of New York for consolidated and coordinated proceedings with the other cases mentioned above. The conditional order was thereafter made final.

Substantial activity ensued in the transferred cases and a settlement plan emerged from the pretrial proceedings. On August 17, 1972 Judge McFadden entered an order, after having held an evidentiary hearing and having conditionally approved the plan of settlement, directing notice to all persons who between October 16, 1968 and August 1, 1969 had purchased Commonwealth securities and to all stockholders of Commonwealth of a settlement hearing and for other purposes stated in the notice.

The notice briefly summarized as class claims that during the period October 16, 1968 to August 1, 1969, certain defendants in concert and conspiracy embarked upon a course of dealings which operated as a fraud upon plaintiffs and their class, entered into financial transactions which had no legitimate business purpose, disseminated false information, withheld material information and "dressed up" Commonwealth's financial statements which artificially manipulated and influenced the mar-

ket price of Commonwealth's securities. The notice further stated that the Court had permitted claims to be asserted derivatively by stockholder plaintiffs for the benefit of Commonwealth and that these claims asserted that certain acts and omissions of certain defendants had resulted in or threatened damage to Commonwealth.

The notice set out terms of the Stipulation of Settlement dated May 26, 1972 which included the provision that any party in the transferred cases not already a party to the Stipulation might become a "New Party" by signing a separate "Stipulation of Concurrence" and making or receiving such settlement contribution as may be negotiated between such New Party and the "Initiating Parties", i. e., those who had signed the Stipulation dated May 26, 1972.

The Stipulation of Settlement provided that a Stipulation of Concurrence shall constitute an appearance by the New Party in any of the consolidated Multidistrict actions as to which the New Party closes a settlement under the Stipulation of Settlement.

■ Stipulations of Concurrence were entered into by the Exeter defendants which were signed on behalf of Commonwealth, on behalf of the derivative stockholder plaintiffs and on behalf of the shareholder class action plaintiffs. By those Stipulations of Concurrence each Exeter defendant became a party to the two Stipulations of Settlement. A Court order in December 1972 unconditionally approved the participation in the settlement of all Exeter defendants as of that time except as to defendants Robert Friedlander and Exeter Equities. It is uncontroverted that the name of Robert Friedlander was omitted through clerical error and as to Exeter Equities, the omission was to obtain the per-

formance of a condition which in fact was thereafter performed.[1] They were accordingly entitled to the releases delivered to them.

It would, of course, have been better practice for the parties to subsequently formally amend the Court's order rather than proceed by practical construction, through the delivery of the intended releases. However, the parties instantly concerned are those before this Court and no claim has been made by Commonwealth that the releases should be set aside as void or otherwise ineffective—the only issue that Commonwealth has tendered in respect to the releases relates to their scope and the intention of the parties in connection therewith—not the authority for their execution.

The attorney for Commonwealth testified unequivocally that the releases were intended to be given, and that the transactions which were asserted or could have been asserted in any of the Commonwealth cases were intended to be embraced within their scope. The facts and circumstances support and corroborate the credibility of that testimony. His testimony was

> The clear intent was that they should be released when both sides performed what was intended.

> \* \* \* \* \* \*

> To protect Commonwealth I left the name of Exeter Equities out of the submission to Judge McFadden and with his knowledge, so that there would remain jurisdiction in him if and when we felt there was any residual problem arising from these conditions which had not been satisfied.

> \* \* \* \* \* \*

> It [the name of Exeter Equities] was left out of the stipulation, according to my

---

1. The May 26 Stipulation of Settlement was approved in a final order and judgment in *Land* dated November 29, 1972. Participation therein of all defendants herein except Robert Friedlander and Exeter Equities was approved in a subsequent order entered in the *Land* case on December 18, 1972. It is clear that the Court's omission of Robert Friedlander was merely due to clerical inadvertence. The attorney who represented Commonwealth in the *Land* litiga-

tion testified herein that the omission of Exeter Equities was deliberate, but intended only to be transitory, i. e., in order to insure its compliance with certain collateral obligations. He further testified that Exeter Equities performed those obligations and the benefits thereupon became due to it under the bargain therefor made with it as part of the settlement. As stated in the text above, a release was delivered to each of them.

best recollection, because of the ambiguous circumstances that existed at the time that that judgment was submitted to the Court.

\* \* \* \* \* \*

THE COURT: So just to close the circle, the reasons that you held back on the Exeter name in the final order became satisfied?

THE WITNESS: Yes sir.

THE COURT: And there is no reason why Exeter should not, as a matter of hindsight contemplation, have had the benefit of this bargain?

THE WITNESS: That's correct, sir.

The testimony of the attorney for Exeter Equities was consistent with the testimony of the attorney for Commonwealth.

 Until legally voided and set aside the releases which the plaintiff's predecessor granted to Robert Friedlander and Exeter Equities must be given full credit and effect and held to cover their intended objectives. The irregularity in respect to the express approval in a Court order of the Stipulation of Settlement as to these two Releasees, in the one case through clerical error and in the other case as a temporary means of retaining jurisdiction to clarify a perceived ambiguity and to insure performance of an anticipated condition to its delivery, does not impair the facial validity and force of either release.

The *Fried* and *Crawford* actions and the pertinent claims in the *Land* action were in fact settled, with judicial approval, pursuant to the terms of the Stipulations prior to December 22, 1972.

In connection with securing the release to it, Exeter Equities surrendered Commonwealth debentures in the face amount of $2.6-million.

 The release to the defendants was intended to cover the claims now again asserted in the complaint herein. They were known and matured claims during the litigated proceedings before Judge McFadden and the releases are clear and unequivocal. Comparison of the matters previously asserted in the cases transferred to New York by the Multidistrict Panel and concluded by settlement with the instant complaint convincingly establishes that the present claims were or could have been asserted by Commonwealth therein.

The complaint herein alleges that prior to November 5, 1969 T.H.E. Investment Corp. agreed to lend Commonwealth up to $3-million with the understanding that the Friedlanders and Soderberg would be put in control of Commonwealth. On that date George Friedlander was made chairman, Robert Friedlander president, and Roger Soderberg a director of Commonwealth, positions which they held until January 8, 1970. During their brief tenure the three individual defendants maintained direct or indirect financial interests in Exeter Equities and/or T.H.E. Investment Corp. and, according to the complaint, they conspired to cause Commonwealth to sell the assets of its real estate division to Exeter Equities in return for inadequate consideration, viz., $5-million and an Exeter Equities promissory note.[2]

The consolidated second amended *Land* complaint, verified September 5, 1970, was in part a stockholder's derivative action brought on behalf of Commonwealth. Defendants herein were not named parties in *Land*. *Land* asserted a derivative claim on behalf of Commonwealth against International Overseas Services, Ltd. ("IOS"); that claim is substantially the same as the plaintiffs' present claim which names as defendants herein the Exeter defendants rather than IOS.

The *Land* complaint alleged that as part of a conspiracy to take over control of Commonwealth and to bring about its liquidation for the benefit of IOS and other preferred creditors, Commonwealth was engaged in the sale of substantially all of its

---

**2.** Among the assets transferred to Exeter Equities were certain properties previously acquired by Commonwealth from Jack B., Don D., and Lillian M. Crawford in return for Commonwealth stock. (The Crawfords were plaintiffs in the California constituent action transferred to New York.)

real property to IOS. The *Land* complaint further alleged that Commonwealth had borrowed funds from IOS which it was unable to repay and that IOS had arranged to have its representatives assume control of Commonwealth in order to insure that it performed its financial obligations to IOS.[3]

The attorney who represented Commonwealth in the *Land* litigation, William Hindman, testified herein that the *Land* complaint had merely misdescribed the defendant—i. e., the sale and its incidents could only have related to Exeter Equities pursuant to the purchase and sale agreement dated March 11, 1970. That Exeter Equities, not IOS, was the purchaser and proper defendant had become known to all concerned no later than February 7, 1972 because a Commonwealth proxy statement of that date issued to its stockholders for a Special Meeting to be held March 23, 1972 in lieu of the Annual Meeting set forth, in detail, the events and transactions in 1970 underlying the present lawsuit and the involvement therein of the Exeter defendants, viz., the Friedlanders, Soderberg, Exeter Equities and Exeter International Corporation (predecessor of defendant T.H.E. Investment Corp.). In a pretrial deposition taken on July 7, 1972 the 1970 transaction and the role therein of Exeter Equities were explored by counsel for the derivative and class action plaintiffs in the *Land* case. The subject was touched on tangentially in a hearing on the proposed settlement of the *Land* action before Judge McFadden in August 1972.

The *Crawford* complaint, filed in California on July 2, 1970 and ultimately transferred to the Southern District of New York for pretrial purposes with *Land* and the other cases referred to above, primarily sought rescission of a transaction in which the Crawfords had received Commonwealth stock in exchange for certain real property. However, the complaint also stated that if rescission were not ordered the Crawfords demanded compensation for transactions that had improperly decreased the value of their Commonwealth stock. The Exeter defendants (except Soderberg) were named as defendants in *Crawford,* and among the transactions complained of was the 1970 sale of real property assets to Exeter Equities referred to in the Commonwealth proxy statement mentioned above (reasserted herein) pursuant to an alleged conspiracy and for allegedly inadequate consideration.

The *Fried* case, a derivative suit brought on Commonwealth's behalf, named the Exeter defendants as defendants but contained no claims based on the 1970 sale to Exeter Equities.

That Commonwealth could have asserted the claim plaintiffs now make against the Exeter defendants in the *Crawford* case is clear. The *Crawford* complaint alleged that "the Friedlanders while in active operational control of both Exeter International Corporation and its subsidiaries and [Commonwealth] and its subsidiaries acquired (without adequate consideration and in breach of its fiduciary duty to [Commonwealth]) in the name of their alter ego Exeter Equities" the real property acquired by Commonwealth from the Crawfords, and that "Exeter after taking over management control of [Commonwealth] conspired . . . to transfer the assets acquired [from the Crawfords] to Exeter for inadequate consideration and in fraud of the creditors and shareholders of [Commonwealth]."

The *Crawford* plaintiffs asked for damages in the event they could not rescind their acquisition of Commonwealth stock, and alternatively asked that Commonwealth be ordered to give them additional stock because the value of their shares had fallen (at least in part due to the Exeter transaction) below a price guaranteed by Commonwealth. Since Commonwealth and the Exeter defendants herein (except So-

---

**3.** Plaintiffs contend that a pretrial order entered in the *Land* case on May 24, 1971 provided that only claims involving transactions that occurred before January 1, 1969 were to be deemed effectively tendered by the *Land* complaint. That order contains no such limitation on the scope of the *Land* stockholder's derivative claims.

derberg) were co-defendants in *Crawford*, the present claim was clearly known to Commonwealth and could have been asserted by it as a Rule 13(g) cross-claim by Commonwealth against the Exeter defendants in that case.

Moreover, the instant claim is one that could have been asserted in the *Land* derivative action. Brought on Commonwealth's behalf, *Land* alleged the same transaction and violation of the securities laws as does the present action except that it misdescribed Exeter Equities as IOS. That misdescription had become apparent well before the settlement and release were undertaken, and the names of the Exeter defendants could have been substituted pursuant to Fed.R.Civ.P. 15 and 21.

In addition, in the May 26, 1972 Stipulation of Settlement to which Commonwealth and the Exeter defendants were parties, the release anticipated was from all claims "with respect to matters referred to in the *Land* complaint." The manifest purpose and intent, in the light of the knowledge of all concerned at the time of the settlement and release, was to settle and release the Exeter Equities transaction and the participants therein. The parties intended[4] that the acts and omissions sued on herein be considered "matters referred to" or actually asserted in *Land*.

Soderberg, indeed, testified herein, without contradiction, that it was the understanding that Exeter Equities relinquished the $2.6-million of debentures to obtain freedom from litigation concerning claims that there was inadequate consideration or conspiracy in connection with the sale of Commonwealth's real estate division to Exeter Equities, and that all litigation arising out of the sale would be discharged.[5]

Indeed, viewing the entire situation in perspective, there seemingly was no other reason for the participation of the Exeter defendants in the *Land* Stipulation of Settlement than to be relieved of claims arising from or related to the 1970 real estate transactions.

This action is barred by the release given to the Exeter defendants by Commonwealth. Commonwealth voluntarily, intentionally and manifestly relinquished and waived its right to sue upon the claim asserted herein, a claim which had matured prior to the settlement and release. It is therefore unnecessary to consider defendants' additional argument that the legal doctrines of res judicata and collateral estoppel preclude Commonwealth from relitigating the matters asserted herein.

Accordingly, judgment is directed to be entered in favor of the defendants and against plaintiffs, dismissing the complaint, with costs.

The foregoing together with the Jointly Stipulated Findings of Fact filed herein by the parties shall constitute the findings of fact and conclusions of law required by Rule 52(a), Fed.R.Civ.P.

SO ORDERED.

---

4. "The scope and meaning of a release will be determined by the manifested intent of the parties . . . ." *Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261, 263 (2d Cir. 1965). "A release negotiated at arm's length and not the product of duress, fraud or mutual mistake, which relates to matured claims of past violations of the federal securities laws but does not excuse future compliance with such laws is to be given its full legal effect." *Weinraub v.*

*International Banknote Co.*, 422 F.Supp. 856, 858 (S.D.N.Y.1976). *See also Mittendorf v. J. R. Williston & Beane, Inc.*, 372 F.Supp. 821, 834–35 (S.D.N.Y.1974), *cited with approval in Ruskay v. Waddell*, 552 F.2d 392 (2d Cir. 1977).

5. The settlement and release did, however, also shield defendants from liability on the claims asserted against them in *Fried*.