Benjamin BERNSTEIN, Plaintiff,

v.

MEDIOBANCA BANCA di CREDITO FI-NANZIARIO–SOCIETA PER AZIONI, Les Fils Dreyfus et Cie., S.A., Lazard Freres & Co., Lazard Freres et Cie. and International Telephone and Telegraph Corporation, Defendants.

No. 73 Civ. 3549 (WCC).

United States District Court, S. D. New York.

March 9, 1978.

Paul Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Mediobanca S.p.A., Les Fils Dreyfus et Cie., S.A., Lazard Freres & Co., and Lazard Freres et Cie.

**2**

Simon H. Rifkind, Paul J. Newlon, Robert S. Smith, Victoria G. Traube, New York City, of counsel.

Wormser, Kiely, Alessandroni & McCann, New York City, for defendant International Tel. and Tel. Corp.

Covington & Burling, Washington, D. C., for defendant International Tel. and Tel. Corp.

## MEMORANDUM AND ORDER

CONNER, District Judge.

This is a shareholder's derivative action brought on behalf of International Telephone and Telegraph Corporation ("ITT") against Mediobanca, S.p.A. ("Mediobanca") (formerly known as Mediobanca Banca di Credito Finanziario-Societa Per Azioni), Lazard Freres & Co. ("Lazard-New York"), Lazard Freres et Cie. ("Lazard-Paris"), and Les Fils Dreyfus et Cie., S.A. ("Dreyfus") alleging that defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder in connection with the resale of certain ITT stock by Mediobanca.

Defendants have filed a motion for summary judgment dismissing the complaint on grounds of collateral estoppel and release, based on the settlement of a state-court action, *Shapiro v. E. R. Black* (N.Y.Sup.Ct. N.Y. Co.), Index No. 20191/1976, approved by the New York Supreme Court, that included the same allegations made in this case. Defendants claim that every fact necessary to prove plaintiff's derivative claims in this case was determined adversely to plaintiff's position in the state court settlement proceedings and that these findings preclude maintenance of plaintiff's claims under the principle of collateral estoppel. Defendants further maintain that even if plaintiff's claims are not barred by collateral estoppel, their claims must be dismissed because releases executed in defendants' favor by ITT pursuant to the stipulation of settlement approved by the state court include and preclude the claims raised in the present case.

Since plaintiff's claim arises under the federal securities laws and is cognizable only in federal court, the complaint may not be dismissed on grounds of *res judicata*. It is well-established, however, that

"where both the state and federal suits are based on the same transactions, collateral estoppel would apply with regard to the facts determined in the state action."

*Abramson v. Pennwood Investment Corp.,* 392 F.2d 759, 762 (2d Cir. 1968); see also *Boothe v. Baker Industries, Inc.,* 262 F.Supp. 168 (D.Del.1966). Similarly, a general release executed pursuant to a court-approved settlement will effectively bar subsequent claims arising out of the same transactions. *Ruskay v. Waddell,* 552 F.2d 392 (2d Cir.), *cert. denied,* 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977); *Abramson v. Pennwood, supra* 392 F.2d at 762.

The posture of the instant motion, however, raises some threshold questions regarding the applicability of the foregoing principles in the context of this case. Defendants' motion for summary judgment is unopposed. It has been held that in a derivative action, the plaintiff-stockholder's consent to the entry of summary judgment against him is analogous to a voluntary dismissal and triggers the notice and approval requirements of Rule 23.1, F.R.Civ.P. *Papilsky v. Berndt,* 466 F.2d 251, 258 (2d Cir. 1972); *Certain-Teed Products Corporation v. Topping,* 171 F.2d 241, 243 (2d Cir. 1948); *Brendle v. Smith,* 7 F.R.D. 119, 120 (S.D.N.Y.1946). This rule was established to prevent evasion of the safeguards of the Rule 23.1 notice provisions, which are designed to discourage the private or collusive settlement of derivative claims under which a shareholder-plaintiff and his attorney personally profit, but which may be completely ineffective to redress the wrongs to the corporation and yet, by the operation of *res judicata,* deny to other shareholders an opportunity to take up the common cause.

In this case, however, a referee was appointed in the New York Supreme Court action to hear testimony and to take evidence as to the merits of the proposed set-

tlement and to report to the court whether, in his opinion, the proposed settlement and compromise of the *Shapiro* action was fair, reasonable and adequate and should be approved by the court. The referee held hearings on two separate occasions attended by all counsel in *Shapiro*, and by counsel for objectors to the settlement. The referee received in evidence 261 exhibits, and briefs were filed by counsel for all parties and the objectors. The referee made specific findings of fact with respect to the merits of plaintiffs' claims and concluded that the proposed settlement should be approved by the court. Each ITT shareholder was mailed a notice of a hearing to be held for the purpose of determining whether the proposed *Shapiro* settlement was fair, reasonable and adequate and should be approved by the court. The notice described the terms of the proposed settlement, described the litigation and recited prior proceedings. It stated that any ITT shareholder could appear at the hearing to show cause why the settlement should not be approved. Of ITT's 227,000 stockholders, one wrote to the court objecting to the settlement and another filed written objections and appeared by counsel at the settlement hearing. On the basis of this record, the New York Supreme Court entered orders approving the Stipulation of Settlement and the releases to all defendants other than ITT, from which no appeal was taken.

This procedure is substantially similar to that contemplated by Rule 23.1. Since the purpose of the rule has been fulfilled, it would be a needless duplication of effort by the parties and by the court to notify all stockholders and hold yet another hearing with regard to this settlement. Rule 23.1 provides that the notice of settlement shall be given "in such manner as the court directs." This Court concludes that the notice and hearing in the state-court action satisfy the requirements of the rule.

The Court therefore turns to the question of whether the facts found in the state proceeding or the release executed there are sufficient to preclude the maintenance of the federal action.

The basic facts out of which this action arises are as follows:

On April 15, 1969, ITT entered into a merger agreement with the Hartford Fire Insurance Company ("Hartford"), which contemplated that Hartford shareholders would receive ITT stock in exchange for their stock in Hartford. Hartford sought a ruling from the Internal Revenue Service ("IRS") that such a merger would not result in taxable gain or loss for the Hartford shareholders. The IRS took the position that the merger would be non-taxable if ITT unconditionally disposed of the 1,741,348 Hartford shares that it had acquired before the Hartford shareholders voted to approve the merger.

In order to consummate the merger without taxable event, ITT determined to sell its Hartford shares. However, the market value of the Hartford shares was at that time well below ITT's cost of approximately $51 per share.

At ITT's request, Lazard-New York suggested Mediobanca as a possible buyer for the stock at a price to be determined later on, on the basis of subsequent market conditions. Thereafter ITT and Mediobanca negotiated a contract stating that Mediobanca was purchasing the shares for a "syndicate." The agreement called for Lazard-New York to perform certain functions as custodian and broker for Mediobanca and as arbiter between the parties. Mediobanca elected the third of three pricing options under the ITT-Mediobanca agreement, which provided that the purchase price paid by Mediobanca to ITT would be based upon the proceeds received by Mediobanca on its resales.

The proposed ITT-Hartford merger was subsequently disapproved by the Connecticut Insurance Commissioner. Thereafter, an exchange offer of ITT for Hartford stock was approved, and more than 99% of the Hartford shares, including those purchased by Mediobanca, were exchanged for ITT convertible preferred Series N shares. Mediobanca then began reselling the ITT shares, only 441,000 of which were resold

**4**

through Lazard-New York; as to the remainder, ITT waived the contractual provision under which only resales through Lazard-New York could be used to determine the purchase price.

This action relates to two of the resales in which Lazard did not act as broker. Pursuant to substantially identical contracts dated December 15, 1970, Mediobanca agreed to sell blocks of 400,000 and 100,000 shares to a Luxembourg firm known as International Investment Associates ("IIA") and to Dreyfus, respectively. The 100,000-share sale was closed in March 1971; the 400,000-share sale in May 1971. The purchase price in each transaction was $55 per share—a price fairly reflecting the market price of ITT Series N shares in December 1970, although lower than the market prices at the closing dates of the transactions.

Plaintiff alleges that, pursuant to the two agreements, Dreyfus and IIA were granted options to purchase the shares, but were in no way obligated to purchase them, and that neither Dreyfus nor IIA made any payments for the alleged options.

It is further alleged that at the time that the Dreyfus and IIA agreements were made, ITT had no knowledge that:

—The President of IIA, Jean Guyot, was a partner in Lazard-Paris and was or would soon become a member of the Board of Directors of Mediobanca;

—Michel David-Weill, a partner in Lazard-Paris was a member of the Board of Directors of IIA;

—Lazard-New York was a participant in the syndicate which had purchased the shares from ITT;

—Dreyfus was also a participant in that syndicate.

■ Plaintiff claims that by failing to disclose these facts and by representing to ITT that the Dreyfus and IIA agreements were negotiated and made at arm's-length with unrelated third parties, Mediobanca, Lazard-New York, Lazard-Paris and Dreyfus employed a device, scheme or artifice to defraud ITT, and engaged in an act, practice or course of conduct which operated as a fraud or deceit upon ITT in violation of Section 10(b) of the Securities Exchange Act and Rule 10b–5 promulgated thereunder.

The third cause of action in the complaint in *Shapiro* is based on the same transactions as the complaint in this action, although the *Shapiro* complaint asserts common law fraud rather than violations of federal securities laws.

With respect to this third cause of action, the referee in the state-court action found that the Dreyfus and IIA agreements were not options, but "mutually binding contracts for the purchase and sale of shares, and in any event, these agreements were shown to ITT, which acquiesced to these transactions."

The referee also found that the facts alleged to have been unknown to ITT at the time of the Dreyfus and IIA agreements were either known to ITT, not supported by the evidence, or not material.

"At least two of these facts were known to ITT in December of 1970: the evidence establishes that ITT knew that (the IIA president) Jean Guyot, was a partner in Lazard-Paris and that Dreyfus was a participant in the Mediobanca syndicate. Others of the alleged facts are not supported by the evidence, Lazard was not a participant in the syndicate, Dreyfus was not controlled by Lazard, and Jean Guyot was not a member of the Mediobanca Board of Directors at the time of the (here involved) transactions, having first become a member in October of 1971.

"The remaining alleged facts, which it is claimed were not disclosed to ITT were not material. It is alleged that Michel David-Weill, a partner in Lazard-Paris, was a member of the Board of Directors of IIA, and that Pierre David-Weill and Andre Meyer were partners both in Lazard and Lazard-Paris, but none of Lazard, Lazard-Paris, the Messrs. David-Weill and Mr. Meyer had any part in the negotiations leading to the Dreyfus or the IIA agreements, so that these alleged facts are immaterial."

These findings of the referee are inconsistent with plaintiff's claims in this action

and thus preclude maintenance of the action on the ground of collateral estoppel.

 The federal action is also barred on the ground of release. The *Shapiro* court found that the settlement agreement was fair and reasonable and approved releases by ITT to defendants that specifically include "any and all claims of any nature or description" that ITT might have against defendants "in connection with or arising out of the matters, transactions and occurrences recited, described or referred to in the pleadings and proceedings" in the present case. This release clearly covers the claims asserted in the federal action, and the shareholders are bound thereby. *Abramson v. Pennwood Investment Corp.,* *supra*; see also *Ruskay v. Waddell, supra*; *Stella v. Kaiser,* 218 F.2d 64, 66–68 (2d Cir. 1954), *cert. denied,* 350 U.S. 835, 76 S.Ct. 71, 100 L.Ed. 745 (1955).

Defendants will be permitted to file supplemental answers pleading the defenses of collateral estoppel and release pursuant to Rule 15(d), F.R.Civ.P. Upon such filing, this action shall be dismissed pursuant to Rule 56, for the reasons stated above.

SO ORDERED.